IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| VIATECH TECHNOLOGIES, INC., <br><br> Plaintiff; <br><br> v. <br><br> ADOBE INC., <br><br> Defendant. | Civil Action No. 20-cv-358-RGA |

MEMORANDUM ORDER

Before me is Defendant's motion to dismiss all claims in the Complaint pursuant to FED. R. CIV. P. 12(b)(6) on the ground that the claims of U.S. Patent No. 6,920,567 ("the '567 patent") cover patent-ineligible subject matter and are therefore invalid under 35 U.S.C. § 101. (D.I. 24). The matter has been fully briefed. (D.I. 25, 31, 34, 37). For the reasons set forth below, Defendant's motion is DENIED.

**I. BACKGROUND**

Plaintiff Viatech filed this lawsuit in the District of Massachusetts against Defendant Adobe on May 24, 2019, asserting infringement of the '567 patent. (D.I. 1). Defendant moves to dismiss all of Plaintiff's asserted infringement claims on the basis that the '567 patent is invalid under 35 U.S.C. § 101 as ineligible patent subject matter. (D.I. 24). The case has been transferred to this District. (D.I. 43).

The '567 patent claims a "digital content file" that contains an embedded "file access control mechanism" that communicates with a "dynamic license database" to allow the license to be subsequently modified if needed. (D.I. 1, Ex. A at 3:56–4:14). Based on the license status, the embedded "file access control mechanism" controls access to the digital content in the file. (*Id.* at 4:53–5:3).

1

## II. STANDARD OF REVIEW

### A. Rule 12(b)(6) Standard

Rule 8 requires a complainant to provide "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) allows the accused party to bring a motion to dismiss the claim for failing to meet this standard. A Rule 12(b)(6) motion may be granted only if, accepting the well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the complainant, a court concludes that those allegations "could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). When considering a Rule 12(b)(6) motion, I may only consider "document[s] integral to or explicitly relied upon in the complaint," including "any undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the Plaintiff's claims are based on the document." *In re Asbestos Prods. Liab. Litig.*, 822 F.3d 125, 133 n.7 (3d Cir. 2016) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1993); *PBGC v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).

"Though 'detailed factual allegations' are not required, a complaint must do more than simply provide 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555). I am "not required to credit bald assertions or legal conclusions improperly alleged in the complaint." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002). A complaint may not be dismissed, however, "for imperfect statement of the legal theory supporting the claim asserted." *See Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014).

A complainant must plead facts sufficient to show that a claim has "substantive plausibility." *Id.* at 347. That plausibility must be found on the face of the complaint. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the [complainant]

2

pleads factual content that allows the court to draw the reasonable inference that the [accused] is liable for the misconduct alleged." *Id.* Deciding whether a claim is plausible will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

### B. Patent-eligible Subject Matter

"Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 101. The Supreme Court has held this section "contains an important implicit exception: Laws of nature, natural phenomena, and abstract ideas are not patentable." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014). The Court in *Alice* set forth a two-step inquiry for determining whether a patent is subject-matter eligible, holding that a "claim falls outside § 101 where (1) it is 'directed to' a patent-ineligible concept, i.e., a law of nature, natural phenomenon, or abstract idea, and (2), if so, the particular elements of the claim, considered 'both individually and "as an ordered combination,"' do not add enough to '"transform the nature of the claim" into a patent-eligible application.'" *SAP America, Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1166–67 (Fed. Cir. 2018) (citing *Alice*, 573 U.S. at 217).

When conducting the first step in the analysis, the Court has cautioned against "overgeneralizing claims," explaining that characterizing the claims at "a high level of abstraction" that is "untethered from the language of the claims all but ensures that the exceptions to § 101 swallow the rule." *TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278, 1293 (Fed. Cir. 2020) (quoting *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335 (Fed. Cir. 2016)). The analysis instead "must focus on the language of the Asserted Claims themselves," *Synopsys, Inc.*

*v. Mentor Graphics Corp.*, 839 F.3d 1138, 1149 (Fed. Cir. 2016), "considered in light of the specification," *Enfish*, 822 F.3d at 1335. "In cases involving software innovations, this inquiry often turns on whether the claims focus on specific asserted improvements in computer capabilities or instead on a process or system that qualifies an abstract idea for which computers are invoked merely as a tool." *Uniloc USA, Inc. v. LG Electronics USA, Inc.*, 957 F.3d 1303, 1306–07 (Fed. Cir. 2020).

**III. DISCUSSION**

Both parties focus their analyses on claim 1 of the '567 patent,[1] which recites the elements of a "digital content file":

> 1. A digital content file including a license control mechanism for controlling the licensed use of digital content, comprising:
>
>> a digital content, and
>>
>> an embedded file access control mechanism embedded in the digital content file, including
>>
>>> a license functions mechanism embedded in the digital content file and including
>>>
>>>> a license monitor and control mechanism communicating with a dynamic license database and monitoring use of the digital content by a user to determine whether a use of the digital content by a user compiles with the license defined in the dynamic license database, and
>>>>
>>>> a license control utility providing communications between a user system and an external system to communicate license definition information between the user system and the external system, including
>>>>
>>>>> a graphical user interface associated with the license control utility to provide communication between a user and user accessible functions of the license functions mechanism, and
>>
>> the dynamic license database wherein the dynamic license database is associated with the digital content file for storing information controlling operations of the file access control mechanism and license information controlling licensed use of the digital content.

(D.I. 1, Ex. A, '567 patent at claim 1).

---

[1] Plaintiff disagrees with Defendant that claim 1 is "representative" of the claims at issue but nevertheless agrees that, for purposes of this motion, the issue of patentable subject-matter eligibility equally applies to all claims in the '567 patent. (D.I. 31 at 14 n.9).

Defendant argues that the '567 patent claims "the abstract idea of controlling access to licensed content. . . . by reciting conventional software and hardware guised as specialized components." (D.I. 25 at 8). First, Defendant asserts that the claimed invention fails the first step in the *Alice* analysis not only because it is directed to the abstract idea of "monitoring or limiting use of licensed content" but also because each of the claim steps recites elements "through a series of broad functions" that "omit[] any specific means for achieving each of these steps." (*Id.* at 10–11). For example, Defendant argues, the claims recite "monitoring use of the digital content" but do not disclose "how the use should be monitored." (*Id.* at 11) (emphasis omitted). Because claims must do more than "describe a desired function or outcome, without providing any limiting detail that confines the claim to a particular solution to an identified problem," *Affinity Labs. of Tex., LLC v. Amazon.com Inc.*, 838 F.3d 1266, 1269 (Fed. Cir. 2016), Defendant maintains that the "broad, functional form" of the '567 patent's claims "confirms their abstract nature" (D.I. 25 at 11).

Second, Defendant asserts that the '567 patent's claims are not "directed to an improvement in the functioning of a computer" and are therefore patent-ineligible. (*Id.* at 11) (quoting *Enfish*, 822 F.3d at 1335). Defendant specifically argues that the claims recite "generalized steps to be performed on a computer using conventional computer activity," which do not improve a computer's functionality and are therefore patent-ineligible. (*Id.*) (quoting *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 612 (Fed. Cir. 2016)). For example, Defendant argues, claim 1 recites a "license monitor and control mechanism" that simply communicates with a "dynamic license database" to determine whether digital content use complies with its license. (*Id.* at 12). Defendant maintains that such a function confers a technological benefit but does not improve computer functionality. (*Id.* at 13).

Plaintiff, on the other hand, argues that the '567 patent improved computer technology for protecting digital content in a number of ways:

> (1) embedding specified license control mechanisms in the digital content files themselves, which ensured that license information was always distributed with each protected content rather than kept externally to the files, as in the prior art, which was easy to circumvent; (2) providing a mechanism to communicate license definition information to the dynamic license database so that the license terms could be modified, unlike the static licenses of the prior art systems; (3)

5

> devising a method for monitoring and ensuring license compliance over time instead of only the first time that the user obtained the software/content; and (4) tying the license control mechanisms to adaptive "fingerprints" of the hardware and software of the end-user's system, so that if the user's system is modified beyond a specified tolerance, use or access may be restricted in accordance with the license terms.

(D.I. 31 at 5) (emphasis omitted).

Each of these improvements, Plaintiff argues, involves application of discrete objects (e.g. a "dynamic license database" or "license control utility" with specific functions recited by the patent claims. (*Id.* at 10). Therefore, Plaintiff maintains, the claims are not directed to an abstract idea.

Plaintiff also argues that Defendant incorrectly assumes that improvements in "license compliance" do not constitute improvements in computer functionality. (*Id.* at 13). For example, Plaintiff quotes Defendant's assertion that the "'embedded' access control mechanism likewise works no computer improvement, since its purported advance is just ensuring license compliance." (*Id.*) (citing D.I. 25 at 13). Even if license compliance may be an obvious goal of a licensing system, Plaintiff argues, Defendant does not show—and needs to prove—that, for example, "embedding the control mechanisms in the [digital content file] is not an improvement, and the evidence of record—the patent itself—is to the contrary." (D.I. 31 at 13).

Defendant replies that even if the '567 patent claims a novel way of embedding license monitoring mechanisms in a digital content file, the technology is nevertheless directed to an abstract idea because it solves a problem "not rooted in technology." (D.I. 34 at 3). Specifically, Defendant argues that the claimed invention does not claim "an improved computer-based technique for embedding licensing structures or for having those structures communicate with a database" and therefore does not provide an improvement in computer functionality. (*Id.*).

The Federal Circuit has found similar claims not to be directed to an abstract idea and, therefore, to constitute patent-eligible subject matter.

In *TecSec.*, the software claims at issue were directed to a system of "simultaneous transmission of secure information to a large group of recipients" by use of "labeling together with encryption." 978 F.3d at 1295. Because multiple people in a data network could have access to the same credentials that

6

confer privileges to open a document, this set-up risked unwanted sharing of information if the document were to reach an unintended recipient. *Id.* at 1295–96. To solve the issue, the claims recited "selecting a label for the object" prior to encryption of its contents, subsequent "labelling" of the encrypted object, and cross-referencing the label with the recipient to determine whether she has "access authorization based on the object label." *Id.* at 1282–83, 1296. Even though "non-computer settings may have security issues addressed by multilevel security," the Court held that just because the invention may principally be applicable to non-computer fields, "that does not negate the conclusion that the patent is aimed at solving a particular problem of multicasting computer networks." *Id.* at 1296. The Court therefore held that the claims at issue in *TecSec* were not directed to an abstract idea under the first step of *Alice*. *Id.*

      Here, the '567 patent claims a digital content file with an element that functions like a label (i.e. the embedded file access control mechanism) with a dynamically shifting value to indicate whether the use of the digital content file complies with its license. (D.I. 31 at 5). This is substantively similar to the claims at issue in *TecSec*, which recite technology that applies a label to communications to ensure users in a data network only access information for which they are authorized. 978 F.3d at 1295–96. As in *TecSec*, the '567 patent claims are directed to "solving a particular problem," such as the difficulty at the time of invention of enforcing license-compliant use because digital content files were distributed separately from their licensing credentials and could not dynamically have their licensing status adjusted. (D.I. 1, Ex. A, '567 patent at 1:26–32, 3:37–47). Even if the principle behind such a system may be applicable beyond computer functionality, as was the case for the data network system in *TecSec*, that is irrelevant for purposes of determining whether the claims are directed to an abstract idea. *TecSec*, 978 F.3d at 1296. Rather, that the '567 patent claims are directed to "solving a particular problem" that deals with computer functionality is sufficient to show that the claims at issue are not directed to an abstract idea.

      Similarly, in *Ancora Tech., Inc. v. HTC Am., Inc.*, the Federal Circuit held, "Improving security . . . can be a non-abstract computer-functionality improvement if done by a specific technique that departs from earlier approaches to solve a specific computer problem." 908 F.3d 1343, 1348 (Fed. Cir. 2018). In

7

that case, the claims at issue recited storage of a "structure containing a license record" within a "modifiable, non-volatile portion of the computer's BIOS" that is used "for verification by interacting with the distinct computer memory that contains the program to be verified." *Id.* at 1348–49. In finding that the claims were not directed to an abstract idea, the Court found dispositive three factors: (1) the structures recited by the claims had "specific and unique characteristics," (2) the structures "were not previously used in the way now claimed," and (3) "the result is a beneficial reduction of the risk of hacking." *Id.* at 1349.

      Here, considering that this is a Rule 12(b)(6) motion, I accept that the '567 patent claims provide improvements over existing technology, such as more effective license monitoring due to embedding the file access control mechanism in the digital content file. (D.I. 31 at 5; *see* D.I. 34 at 5). To the extent Defendant challenges Plaintiff's claims that the '567 patent improves upon prior art computer technology, it does so by arguing that the improvements are not solely linked to computer functionality and therefore lack sufficient specificity to avoid being directed to an abstract idea. (D.I. 34 at 3). But *TecSec* makes clear that the improvements need not be linked exclusively to computer functionality in order to be patent-eligible subject matter. 978 F.3d at 1296. The '567 patent claims meet all three criteria set forth by the Court in *Ancora* when it found that claims were not directed to an abstract idea: (1) structures such as the embedded file access control mechanism and dynamic license database have particular functions enumerated in the patent specification (*see, e.g.*, D.I. 1, Ex. A, '567 patent at 4:15–21, 35–38, 53–62; 4:63–5:3), (2) neither embedding the license access control mechanism in the digital content file nor including a dynamic license database were used in prior art file systems in the way their use is taught by the '567 patent (*id.* at 3:37–48), and (3) these claim elements facilitate ease of distribution and monitoring of license-compliant use of digital files (D.I. 31 at 5).

      The '567 patent claims therefore pass muster under *Alice* Step 1 and are not directed to patent-ineligible subject matter. I need not reach the second step of the *Alice* analysis since the claims are not directed to an abstract idea. *See Data Engine Techs. LLC v. Google LLC*, 906 F.3d 999, 1011 (Fed. Cir. 2018).

## IV. CONCLUSION

For the reasons set forth above, Defendant's motion to dismiss all claims in Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6) and 35 U.S.C. § 101 is DENIED.

IT IS SO ORDERED.

Entered this 30th day of March, 2021.

   /s/ Richard G. Andrews   
United States District Judge