1              IN THE UNITED STATES DISTRICT COURT

2              IN AND FOR THE DISTRICT OF DELAWARE

3

       VIATECH TECHNOLOGIES, INC.,      )
4                                       )
       -------------------Plaintiff,  )
5                                       )Case No.
              vs.                       )20-CV-358-RGA-
6                                       )MPT
                                        )
7      ADOBE INC.,                      )
                                        )
8      -------------------Defendant.  )

9              TRANSCRIPT OF DISCOVERY CONFERENCE

10

11             DISCOVERY CONFERENCE had before the

12     Honorable Mary Pat Thynge, U.S.M.J., via

13     teleconference on the 1st of August, 2022.

14                     APPEARANCES

15        ASHBY & GEDDES, P.A.
             BY: ANDREW MAYO, ESQ.
16
                      -and-
17
          BUNSOW DE MORY LLP
18           BY: MICHAEL ZACHARY, ESQ.
             RICHARD LIN, ESQ.
19
                          Counsel for Plaintiff
20

21        RICHARDS, LAYTON & FINGER, P.A.
             BY: KELLY E. FARNAN, ESQ.
22
                      -and-
23
          PERKINS COIE LLP
24           BY: MATTHEW MOFFA, ESQ.

25                        Counsel for Defendant

1           THE COURT:  Good morning, all.  This

2     is Judge Thynge.  Good morning.  Before we

3     begin, I would like -- if you don't mind, I

4     would like Mr. Mayo -- I think I heard your

5     voice -- I would like you to introduce who is

6     on the ViaTech side.

7           MR. MAYO:  Yes, of course, Your

8     Honor.  Andrew Mayo here this morning on behalf

9     of Plaintiff ViaTech, and I am joined today by

10    my co-counsel from Bunsow De Mory.  We have

11    Michael Zachary and Richard Lin on the line,

12    and Mr. Zachary will be presenting arguments

13    today on behalf of the plaintiffs.

14          THE COURT:  All right.  Thank you.

15          And, Ms. Farnan, I heard your voice.  Who

16    else is on the line on behalf of Adobe?

17          MS. FARNAN:  Yes, good morning, Your

18    Honor.  I'm here on behalf of Adobe, and I'm

19    joined by my co-counsel at Perkins Coie,

20    Matthew Moffa, and Mr. Moffa is going to

21    address the Court this morning.

22          THE COURT:  All right.  Thank you.

23    And I imagine we have a court reporter.  Would

24    the court reporter introduce themselves.

25          THE REPORTER:  Yes, this is Deanna

1    Warner.

2              THE COURT:  There will be a

3    transcript made of this call, and what I would

4    appreciate you doing, Deanna, is to send a copy

5    to my law clerk, Daniel Taylor.  And I

6    understand that we have -- and we will take the

7    responsibility of having the transcript of this

8    discussion today docketed.

9         All right.  There's a number of issues

10   here, from what I can tell.  There's basically

11   cross-issues, but they seem to have focused

12   predominantly on similar issues.  We'll start

13   off with ViaTech's arguments and what it is

14   requesting.

15        Mr. Zachary, please proceed.

16              MR. ZACHARY:  Good morning, Your

17   Honor.

18        This is -- Your Honor is correct.  There

19   are a number of issues.  ViaTech has raised two

20   issues with the Court.  The first issue

21   concerns discovery related to ViaTech's

22   contentions that Adobe infringes the patent in

23   suit through foreign sales and the infringement

24   that we contend, or ViaTech contends, that

25   happened is under Section 271(f) of the patent

1      statute.

2            And the second issue concerns some

3      agreements that ViaTech contends are relevant

4      to damages and that Adobe has not produced.

5      And I should mention Adobe has also not

6      produced any discovery related to the foreign

7      infringement, if you will.

8                  THE COURT:  All right.

9                  MR. ZACHARY:  The exporting

10     component.

11                 THE COURT:  So why don't we deal with

12     the first issue.

13                 MR. ZACHARY:  Okay.  Very good, Your

14     Honor.

15           So the first issue -- excuse me.  The

16     first issue is a that we, in our final

17     infringement contentions, we have spelled out a

18     theory of infringement under 271(f).  The

19     scheduling order provided for both initial and

20     final contentions, and the deadline for the

21     final contentions was set more than two months

22     before the fact discovery deadline to enable

23     discovery concerning those contentions, if

24     needed, during that two-month period or more

25     than two-month period, I should say.

1          THE COURT:  When -- wait a minute.

2     When did the fact discovery deadline occur?

3          MR. ZACHARY:  Yes.  The original fact

4     discovery deadline was July 1st.  The final

5     infringement contentions were served on

6     April 25th.  The fact discovery deadline has

7     been extended.  Adobe requested that extension

8     as part of an agreement that would actually

9     move the final discovery date back and also the

10    trial date, and the trial date has been moved

11    back about six months by Judge Andrews as a

12    result of that.

13          THE COURT:  When was it extended to?

14          MR. ZACHARY:  Until -- I might be off

15    by a day or two, but I think it's October 1st.

16    It could be October 2nd or 3rd.

17          THE COURT:  Okay.

18          MR. ZACHARY:  And actually, shortly

19    before -- about a week before serving the final

20    infringement contentions, we served discovery

21    requests on Adobe related to the infringement

22    under 271(f).  The discovery consisted of a

23    handful of document requests, interrogatories,

24    and a modification, very small modification, to

25    the outstanding 30(b)(6) deposition notice to

```
 1        add that.
 2               THE COURT:  What -- is the Section
 3        271(f) included in your original complaint?
 4               MR. ZACHARY:  Not explicitly.  Not
 5        explicitly, Your Honor, and that's actually the
 6        subject of Adobe's motion.  Their contention is
 7        that it needed to be pleaded.  And we have
 8        briefed that issue, whether it does need to be
 9        pleaded or not.  Adobe has not cited a single
10        case that says you need to plead 271(f) when
11        you do plead inducement -- induced infringement
12        or contributory infringement.  And we have
13        cited to the Court in our brief three cases
14        from a diversity of jurisdictions across the
15        U.S. holding that you don't need to plead
16        271(f) specifically.  So long as you have
17        alleged induced infringement and/or
18        contributory infringement, that's sufficient
19        because 271(f) is simply a thesis of induced
20        infringement and contributory infringement,
21        depending upon the subsection of 271(f), so
22        it's not explicitly pleaded, but it's still
23        implied within the complaint.  And, in fact,
24        there's some considerable detail in the
25        complaint and in our initial infringement
```

1          contentions concerning the induced and

2          contributory infringement or our theories for

3          such infringement.

4               So this -- I think the issue will come

5          down to whether it needs to be pleaded or not.

6          I'm not -- as I said, we haven't seen any cases

7          indicating that it does need to be pleaded, and

8          we've found cases where it says it does not

9          need to be pleaded.  Adobe also raised some

10         issues concerning the burden of the discovery,

11         and although we proposed -- after hearing some

12         high-level discussion about that during the

13         meet-and-confer, we said we're happy to work

14         with you to address any alleged burden, but I

15         don't think that process has been fully fleshed

16         out.  So if the Court orders discovery, I'm

17         going to object to Your Honor and ask that

18         parties perhaps have some time to flesh out

19         that issue and report back to the Court because

20         I think that issue could be worked through.

21              So in each of the three cases that I

22         mentioned that are cited in our brief, the

23         Court actually dealt with this issue whether to

24         permit discovery in light of the state of

25         pleadings.  In those three cases, the

1          plaintiffs had not specifically mentioned

2          271(f) in its complaint.  In one case, they had

3          not mentioned it in their preliminary

4          infringement contentions either, but in all

5          cases, the Court permitted the foreign sales

6          discovery.  And I should say the discovery that

7          we're asking for is generally about the methods

8          of -- that Adobe used to sell accused products

9          overseas and also the quantities under each

10         method.  That's probably a fair summary of the

11         discovery we've sought.

12                    THE COURT:  Are you finished?

13                    MR. ZACHARY:  I don't think I have

14         anything to add to that, Your Honor.

15                    THE COURT:  All right.  And,

16         Mr. Moffa, what is the response?

17                    MR. MOFFA:  Thank you, Your Honor.

18                    THE COURT:  Particularly the fact

19         that there's no case law that was cited by your

20         side refuting what has been represented by

21         Mr. Zachary.

22                    MR. MOFFA:  I'm happy to respond to

23         that, Your Honor, and I'll start there.

24              And of course Mr. Zachary's authorities

25         were cited in his second brief.  They -- they

```
1       could have been cited in the initial brief so
2       we could respond to them, but they were held,
3       not unlike the contentions at issue in this
4       case.
5           But, Your Honor, I will point to two
6       cases in which allegations under 271(b) and (c)
7       did not suffice to allege inducement or
8       contributory infringement under 271(f) from
9       this Court, and then, Your Honor, I will
10      explain why there's a difference between
11      Mr. Zachary's cases and ours.
12          So first, Your Honor, I will cite to the
13      Confluent Surgical versus HyperBranch case.
14      That's civil action 17-688, and the case
15      citation is 2017 Westlaw 4804264.  The second
16      authority, Your Honor, is called TriDi
17      Networks, T-R-I-D-I Networks, versus Signify,
18      Civil Action 19-1063, and the citation is 2020
19      Westlaw 2839224.
20              THE COURT:  28392?
21              MR. MOFFA:  9224.
22              THE COURT:  And are both these cases
23      in this jurisdiction decided by this Court?
24              MR. MOFFA:  Yes, they are.  The
25      Confluent case was before Judges Stark and
```

1        Burke, the TriDi case was before Judges

2        Connolly and Burke, both presided in this

3        court.  In each case, a plaintiff had

4        separately pled infringement under 275(b), (c),

5        and (f), and the Court found these pleadings

6        under 271(b) and (c) but not under 271(f) and

7        no decisions were reached on the Iqbal Twombly

8        plea standard for pleading, and that makes

9        sense because, Your Honor, a factual allegation

10       that a defendant induced a U.S. customer to use

11       an allegedly infringing product is entirely

12       different from an allegation that a defendant

13       induced a foreign party to assemble components

14       without even identifying what those components

15       are to create an infringing product overseas,

16       which is what section 271(f) addresses.

17           I think the reason for the difference in

18       authorities, Your Honor, is because the cases

19       that Mr. Zachary cites don't address the Iqbal

20       Twombly standards at all, and, in fact, two of

21       them predate Iqbal and Twombly, so, Your Honor,

22       Adobe is prejudiced by ViaTech waiting until

23       April of this year to even mention infringement

24       in this regard without having to show good

25       cause to amend its pleading without having to

1    pass the Iqbal Twombly standard and without

2    having to articulate those theories in detail

3    until the time of expert reports.  We're done

4    with infringement contentions.

5         Your Honor, I would point the Court to a

6    footnote in the plaintiff's responsive brief.

7    Footnote two makes reference --

8              THE COURT:  Wait a minute.

9              MR. MOFFA:  I'm sorry.  Let me get

10   the responsive brief.  Okay.

11             THE COURT:  What page did you say?

12             MR. MOFFA:  I'm sorry.  I was

13   referring to the plaintiff's responsive letter

14   brief, and it was on page three of the brief at

15   footnote two at the bottom of the page.

16             THE COURT:  Yeah, I remember reading

17   that.

18             MR. MOFFA:  No, Your Honor, sorry.

19   I'm referring to the fact that the plaintiff

20   has filed a second complaint in this action and

21   the parties have disputed whether that's

22   proper, but the plaintiff writes in its brief

23   that that section complaint includes an express

24   claim under Section 271(f) to, quote, conform

25   to the allegations in ViaTech's final

1    infringement contentions.  I submit, Your

2    Honor, that the plaintiff knows that its

3    current contentions don't conform to its

4    current complaint because the current complaint

5    does have a Section 271(f) claim, and as

6    between the complaint and the contentions, the

7    complaint wins.

8         Your Honor, if that addresses the case

9    law point, I'd like to step back to one other

10   point in response to Plaintiff's papers.

11              THE COURT:  Go right ahead.

12              MR. MOFFA:  Thank you.

13        Plaintiff's brief makes an error.  The

14   second brief says that Adobe fails to

15   acknowledge that ViaTech's discovery requests

16   were served over two months before the final

17   infringement contentions were due.  That's on

18   page four in the final paragraph of the brief

19   we were just looking at, Your Honor.  That is

20   entirely incorrect.  The final contentions in

21   this case were due on April 25th, and the

22   discovery at issue was served on April 19th.

23   That's less than a week before the contentions

24   were due.  Not in any time to use them in the

25   context of final contentions, but the point I

1       really want to emphasize for Your Honor is that

2       these contentions under 271(f) could have been

3       articulated at the start of the case, certainly

4       by September 15th of last year, which was the

5       deadline for initial infringement contentions

6       and for pleading amendments or at any other

7       time before April.

8               Your Honor, respectfully, looking at the

9       scheduling order at Docket Number 59, which the

10      parties negotiated over a year and a half ago,

11      Adobe agreed at the outset to provide detailed

12      core technical documents, including source

13      code, for all of the accused products and gave

14      Plaintiff more time than under the standard

15      discovery order to serve its initial

16      infringement contentions on the understanding

17      that they would make use of early discovery.

18              On July 1st, Adobe produced 5,000 pages

19      of core technical documents.  On July 14th, we

20      produced source code for all the accused

21      products.  When ViaTech asks for additional

22      documents that were referenced in its initial

23      production, Adobe produced 15,000 more pages of

24      them on August 17th, almost a year ago.

25              Your Honor, the best we understand the

1    allegations under 271(f), they aren't based on

2    anything outside of those materials.  They're

3    not based on some last-minute revelation by an

4    Adobe witness or documents that Adobe held onto

5    producing.  There's nothing in those

6    contentions that could not have been

7    articulated by September 15, 2021, which was

8    the deadline to make initial contentions and

9    the deadline to amend pleadings.  If they

10   wanted more discovery, they could have sought

11   it at any point before April.

12        The way they've done it here is entirely

13   prejudicial.  It leaves the infringement theory

14   fungible all the way to the time of expert

15   reports.  It doesn't have to pass the Iqbal

16   pleading standard.  It doesn't have to pass the

17   good cause standard.  We have no opportunity to

18   respond to it.  We can't take additional

19   contention discovery from ViaTech about the new

20   contentions that they served.  I think the

21   Court -- ViaTech doesn't want the Court to see

22   that, and so they point out that there were a

23   few weeks of fact discovery between the

24   deadline for final contentions and the close of

25   fact discovery, but I think that's a complete

 1       non sequitur.  There's no final final
 2       contention deadline.  The final contentions --
 3       because the deadline the parties were supposed
 4       to substantially complete their document
 5       production was in 2021, so serving a new theory
 6       with new discovery in April of '22 after the
 7       final contention deadline leaves Adobe
 8       scrambling at the end and subject to an
 9       infringement theory that simply was never
10       plead.
11              And so, yes, I think the parties' dispute
12       boils down to whether the complaint complains
13       an allegation under 271(f).  It does not.
14       There's no reference to 271(f), and the facts
15       in that complaint are unrelated to this new
16       theory of infringement, and the Court had a
17       perfectly fine schedule for putting in
18       contentions like that that could have been
19       followed and for whatever reason, ViaTech
20       waited until April to do so.  Respectfully,
21       Your Honor, it's just too late.
22                   THE COURT:  I do have a question.
23       Did ViaTech ever request leave to amend?
24                   MR. MOFFA:  No, Your Honor, and, in
25       fact, the second complaint that was filed which

1    became a subject to a motion to dismiss between

2    the second complaint on the same claim, there

3    was no leave sought for that either.

4              THE COURT:  What's the status of the

5    second case right now?

6              MR. MOFFA:  Because the parties are

7    waiting for Judge Andrews to issue a ruling on

8    a motion to dismiss the first complaint, the

9    parties have agreed to stay the second

10   complaint and preserve their arguments as to

11   whether the second complaint is proper, and I

12   think the parties reached that agreement, at

13   least on Adobe's side, so as not to burden the

14   Court with a second round of motion practice

15   while they were waiting.

16        Adobe maintains there should never have

17   been a second complaint filed on them, on the

18   same claims.  ViaTech disagrees, but I think

19   the parties agree that an orderly resolution

20   would involve Judge Andrews deciding the first

21   motion to dismiss before we get to the second

22   motion, and that's where we stand.

23             THE COURT:  When is your expert

24   discovery supposed to be done?

25             MR. MOFFA:  Expert reports are due

1          about a month after the close of fact

2          discovery, so we would begin expert reports in

3          November, but I think the important deadline,

4          Your Honor, would be the gap between

5          Plaintiff's opening infringement report and

6          Defendant's response.  The plaintiff never has

7          to provide a 217(f) claim in the complaint and

8          the plaintiff never has to articulate its

9          271(f) arguments.  I don't find the two

10         paragraphs that we see added in April.  Then we

11         won't know Plaintiff's theory of infringement

12         under this new statute until the day their

13         expert serves their report, and Adobe will have

14         very, very little time to respond.  This could

15         have been presented in September, and we would

16         have had much more time to address it

17         appropriately under the original case schedule.

18                    THE COURT:  Okay.  All right.  Were

19         you going to say something else, Mr. Moffa?

20                    MR. MOFFA:  No, Your Honor.

21         Respectfully, unless you have additional

22         questions, I think that's our argument on this

23         point.

24                    THE COURT:  I'll give each side a

25         short -- there were two issues I understood

1    that were brought up on the agreement.  There

2    was another one which I thought was discussed

3    by Mr. Zachary the first time, if I believe I'm

4    not wrong, the agreements that -- the

5    agreements that were not produced.

6         MR. ZACHARY:  That's correct, Your

7    Honor.  We raised that point.  I have not yet

8    presented any argument yet.

9         THE COURT:  Okay.  All right.  Let's

10   go to the second point then, agreements that

11   were not produced.

12        MR. ZACHARY:  Your Honor, may I first

13   have a moment to respond to what Mr. Moffa

14   said?

15        THE COURT:  If you do -- yes, but if

16   you do, it's going to be the last counter.  Go

17   ahead, Mr. Zachary.

18        MR. ZACHARY:  Yes, I understand, Your

19   Honor.  Thank you.

20        The first point is that Mr. Moffa cited

21   two cases that are not familiar to me and that

22   should have been cited in the opening papers,

23   so we've not had a chance to respond to that.

24   So these cases, apparently, don't have to do

25   with the precise issue that we have here, which

1        is that general allegations of infringement

2        detailed, also of inducement and contributory

3        infringement, are sufficient notice before a

4        claim under 271(f).  Those cases simply deal

5        with whether the 271(f) allegations are

6        sufficient, if I heard Mr. Moffa correctly.

7              We don't have that issue here.  We have

8        not received any allegation or contention that

9        ViaTech's contentions are inadequate.

10       Mr. Moffa said just a moment ago it needs to be

11       fleshed out more, but that's the first I've

12       heard that.  And in the second case, which is

13       now stayed, where we did include a 271(f) to

14       put the two cases in alignment, we did receive

15       a motion to dismiss filed by Adobe, but there

16       was no challenge to the 271(f) claim and

17       whether it was sufficient or not.  And, of

18       course, that would have been the time to do it,

19       in these initial 12(b) motion stages, so I

20       don't think that's an issue here.

21             Rather, the issue is whether -- as the

22       cases we've cited, whether discovery is proper

23       relating to 271(f), and the cases that we've

24       cited indicate that it is.

25             I also just want to address the prejudice

1           issue.  I actually haven't heard what the

2           prejudice is.  There were more than two months

3           between the final infringement contention date,

4           which we met timely, and the original close of

5           fact discovery and, actually, more than five

6           months before the extended close of fact

7           discovery, so I don't think there's a

8           timeliness issue here.  It's why you have

9           preliminary and final infringement contentions

10          in a case.  You learn things.  You think about

11          things that deepen your understanding of both

12          the technology and other issues in the case.

13              The scheduling order didn't require good

14          cause for final infringement contentions.  It

15          only set a date for them, and there is going to

16          be, in some cases, at least some change between

17          the two sets of contentions, so I didn't hear

18          what the alleged prejudice was.  In fact, you

19          know, there's kind of a separate standard for

20          that sort of thing.  I understand there's the

21          Pennypack case out of the Third Circuit that

22          the defendant, Adobe, here has never made any

23          argument under Pennypack or tried to meet that

24          standard, that there's some level of prejudice

25          that 271(f) shouldn't be in the case.  I don't

1       think that's the issue here.  There may be an

2       issue about the pleadings, and I think that's

3       what we've really tried to address.

4            And I do apologize to the Court.

5       Mr. Moffa is correct, and I mentioned that at

6       the outset, that last night, as we went through

7       the briefs, I saw the same error that Mr. Moffa

8       did.  We had actually put it correctly in our

9       motion and incorrectly in response to Adobe's

10      motion, that I tried to clarify the timing of

11      the dates when I first set out my argument

12      today, but I apologize to the Court for that

13      error in our brief.  It was completely

14      inadvertent.

15           THE COURT:  All right.  All right.

16      Do you have, Mr. Moffa, any final statements?

17           MR. MOFFA:  Incredibly, Your Honor, I

18      will reference the arguments we made but say

19      that Mr. Zachary has made a number of

20      misrepresentations that the Court can quickly

21      correct.

22           So first, in our motion to dismiss the

23      second complaint, we expressly said it was an

24      improper attempt to add claims under Section

25      217S(f) to get around the Court's deadline for

1    amendment of pleadings.  That was stated and

2    raised in that motion, so our position has been

3    clear.

4          In terms of arguments that the case --

5    excuse me -- that the 271(f) allegations

6    they've made in their contentions are

7    insufficient, that's clearly before the Court.

8    Your Honor, on page two of our responsive

9    brief, we explain that the 271(f) allegations

10   are vague and conclusory and not for lack of

11   discovery.  We quote those contentions and then

12   we explain that if ViaTech is allowed to pursue

13   and seek discovery on unplead and vaguely

14   articulated allegations, we won't see an actual

15   theory until expert reports are served,

16   depriving us of notice, service, and discovery

17   that the final contentions are supposed to

18   provide.

19         We have, Your Honor, alleged in our

20   motion to strike the contentions that those

21   contentions are deficient in substance as well

22   as improperly brought without having pled a

23   claim under 271(f).  Your Honor, the cases that

24   we cite are on point, and I think both parties

25   are hamstrung by being handed cases after the

1    opening briefs were filed, but I didn't realize

2    that the plaintiffs were unaware of case law

3    saying that an articulated claim for inducement

4    under the U.S. Statute 271(b) and (c) didn't

5    suffice to put them on notice of a claim under

6    271(f) and thought that was blackletter because

7    the Court can recognize that the acts under the

8    two statutes are quite different.  Again, an

9    American using an allegedly infringing product

10   is different from someone outside the U.S.

11   assembling components of a product, and there

12   never was, in that case, an allegation that

13   Adobe, that anyone outside the U.S., was

14   assembling components to create a product, let

15   alone that Adobe was inducing it until it

16   showed up in the 217(f) allegation, not in the

17   complaint.

18        Finally, Your Honor, I'm sure you're well

19   familiar with the Pennypack decision.  Had

20   ViaTech moved to amend its complaint, which

21   they did not do, then the Pennypack factors

22   might have been relevant, in addition to the

23   good cause requirements under Rule 16(b), but

24   the point is they never moved to amend.  In

25   anticipation that this might come up at the

1      hearing, we did, on page three of our brief,

2      address Pennypack, which ViaTech never did in

3      their papers, and you can see our discussion

4      that the suggestion that prejudice to Adobe can

5      be cured is incorrect.  And, again, that's page

6      three of our responsive brief.  So we have

7      identified that Pennypack could become an

8      issue, but this was all too late because

9      ViaTech never tried to amend its complaint in

10     the first place.

11         Your Honor, those are the points from

12     Mr. Zachary's response that I felt needed to be

13     addressed.  Otherwise, we stand on our

14     arguments.

15         THE COURT:  All right.  I think the

16     second issue that's involved in this case is

17     separate and distinct from the first one, and I

18     feel comfortable making a ruling on the first

19     issue concerning the Section 271(f).  The

20     thought crossed my mind when I was reading

21     this, I don't think the statute dealing with

22     infringement was just enacted, and there was a

23     purpose for each of the subparts.  There's a

24     recognition that there is a difference among

25     them because if that weren't the case, then why

1     not just include 271(f) with contributory

2     infringement?  So there is a recognition that

3     they're different, and I have familiarity with

4     the Pennypack case, and I just kind of looked

5     through everything and feel that a lot of this

6     could have been resolved or could have been

7     addressed way back when there was more time.

8          The amount of discovery that could very

9     well be involved in this, I'm not exactly

10    certain, but if they even split it between what

11    was represented by Mr. Zachary and what's been

12    told to me by Mr. Moffa, that it's going -- it

13    has a potential to run to some extent, and I

14    feel that this issue of under 271(f) is

15    something that could have been learned by

16    Plaintiff much earlier and could have been done

17    by amending the complaint.

18         I'm not entirely -- at this stage of the

19    game in this matter, I'm going to deny the

20    request that Plaintiff has asked in its

21    submission.  And, you know, the unduly

22    burdensome argument, and we didn't really get

23    into it on the phone, but I don't feel that it

24    is the discovery directly on point with respect

25    to ViaTech's infringement contentions.  I don't

1    feel that that defendant was on notice because

2    nobody was on notice that this was even going

3    to be an issue in the case, and it was raised

4    very late, so I'm denying the request for

5    discovery on that, so Adobe's motion, then, to

6    strike here is granted.

7         And I believe that's the motion but I

8    couldn't find the number.  I think it was DI

9    155 in which -- I hope I've got the right

10   number.  153.  So that is -- that motion is

11   denied.

12        So let's now go to the issue of these

13   agreements, I believe, the second, agreements

14   that have not been produced.  So do you want to

15   start, Mr. Zachary?  Because I believe that was

16   your issue.

17             MR. ZACHARY:  Yes, Your Honor.  This

18   is Michael Zachary.  Thank you very much.  So

19   we are seeking what must be a handful of

20   agreements, less than ten -- maybe it's five,

21   maybe as many as ten -- between Adobe and in

22   one case Adobe and a company called ████████

23             MR. MAYO:  This is -- Mr. Zachary, is

24   it possible that we could have the discussion

25   without naming the parties?  Because I think

1    you filed appropriately under seal, and if this

2    is going to be a public record, it might be

3    better.

4              MR. ZACHARY:  Yes.  So there's an

5    agreement between Adobe and Company A that we

6    contend is relevant to damages, and there are

7    also -- second piece is agreements between

8    Adobe and its customers that we contend are

9    relevant.

10             So let me take the agreement with Company

11   A first.  The agreement concerns the --

12   something called DRM software.  Adobe has -- I

13   should explain.  "DRM" refers to digital rights

14   management, and at one time we had accused this

15   software of being -- infringing.  After we

16   received some sales numbers relating to that

17   software, we elected not to pursue the

18   infringement case against that software.

19   However, agreements relating to that software

20   are still relevant to the products that are

21   accused in the case.  They're extremely

22   comparable technology.

23             What's accused in the case is Adobe's

24   activation software.  So the activation

25   software is used to protect Adobe's products

1    when Adobe's products are activated.  And when

2    I say "protect," I mean to protect them against

3    piracy and counterfeiting, simply unauthorized

4    use by someone who has given them a copy.  But

5    it's trying to use the copy beyond the

6    authorized license.

7         DRM software serves a similar function,

8    but instead of protecting Adobe's own products,

9    it's used to protect third parties.  So if a

10   third party wants to use Adobe software to

11   protect their products when those products are

12   distributed, they can use this DRM software.

13   So that's -- I'm sure there are technical

14   differences between the two types of software,

15   but they are also technologically comparable.

16        So the activation software, being a part

17   of Adobe's software, is not sold to anyone.

18   It's not an independent product.  It's a part

19   of the code you receive when you get an Adobe

20   product.  And our job as plaintiff is to put a

21   value on that.  Well, it's difficult to do when

22   the product isn't sold.  You have to use a

23   variety of techniques, and I'm not an economist

24   or a damages expert, but I know that these are

25   techniques that they use.

```
 1              One thing that they do is they will look
 2         at comparable software.  Well, the comparable
 3         software does have some or we think it has some
 4         pricing associated with it, and this agreement
 5         between Adobe and Company A will give us some
 6         information about the pricing for that
 7         software.  And the pricing might be a royalty.
 8         It might be other things.  We're not sure,
 9         since we haven't seen the agreement, but the
10         value of the software itself is relevant to
11         determining the value of the component of the
12         activation software that protects Adobe's
13         products from unauthorized use.  So we have
14         sought that agreement.
15              The other agreements also relate to
16         digital rights management.  Again, they're no
17         longer included in the case, but the agreements
18         themselves are relevant to calculating damages
19         for the activation software.  Adobe licenses
20         this DRM software to its customers, and we've
21         asked for a handful of representative
22         agreements.  I think it is conceded that the
23         production of these agreements is not
24         burdensome at all, so I think the only argument
25         being made by the defendant here is whether
```

1          it's discoverable, these agreements are

2          discoverable or not.

3                    But we -- I can tell the Court that our

4          expert has asked to see these agreements

5          because he thinks they may be relevant to his

6          calculations.

7                         THE COURT:  All right.  Okay.  And

8          what is Adobe's response?

9                         MR. MOFFA:  A very brief response,

10         Your Honor.

11                   First, Mr. Zachary appropriately didn't

12         refer to these as license agreements, although

13         that was in the original brief, and that's

14         because the agreements being sought here are

15         not patent license agreements.  Adobe has

16         already produced its license agreements with

17         Company A.

18                   And Mr. Zachary is right.  The product

19         for which these agreements are sought was

20         withdrawn from infringement allegations in

21         September.  I understand that discovery is

22         broader than simply the accused products, but

23         the point is timing.  Again, Adobe was on

24         notice of this product, these customer

25         agreements, this, you know, resale agreement at

1     the outset of the case.

2          And our understanding was that agreements

3     related to the unaccused products are no longer

4     subject to discovery.  They've shown back up

5     here at the point when the plaintiff's expert

6     has asked for them, but that timing is

7     prejudicial in that the discovery is not

8     proportional to the needs of the case.

9          These are business agreements.  The

10    agreement with Company A is not to take a

11    patent license.  We've actually produced patent

12    licenses with Company A.  This is an agreement

13    for Adobe to sell product and services by

14    Company A via its DRM product.  So this is a

15    business agreement, a resale agreement.  And

16    the other agreements that are sought are

17    customer agreements.

18          So, Your Honor, yes, concededly, right

19    now, ViaTech is asking for 5 or 10 agreements

20    that they were aware of months ago, but to the

21    point, if those agreements are used in any way

22    in the case, Adobe is going to have to produce

23    information that puts those business agreements

24    into context.  Adobe is going to have to

25    investigate those agreements internally,

1          identify witnesses, and potentially offer more

2          witnesses on more topics for cross-examination

3          so that we can rebut whatever inferences the

4          expert wants to draw.

5               So our position is plain.  Yes, ViaTech

6          can say five agreements are not burdensome to

7          produce, even at the end of the case, but

8          unless ViaTech is going to make representations

9          that they'll seek leave or otherwise

10         accommodation for the additional discovery that

11         those agreements will themselves engender, then

12         we don't and shouldn't be made to produce them

13         now, and that's particularly so where they

14         relate to a product that ViaTech accused at the

15         start of the case and clearly knew about and

16         withdrew those allegations in September.

17              THE COURT:  All right.  And would you

18         like to respond, Mr. Zachary?

19              MR. ZACHARY:  Yes, thank you, Your

20         Honor.

21              So we have an agreement.  I think that

22         the number of agreements is small indeed.  I

23         don't think we've never not asked for these

24         agreements.  We have discovery requests going

25         back a long time.  It became the subject of

1           meet-and-confer discussions at least as early

2           as May.  My colleague Mr. Lin is on the line.

3           He can probably remind me if we asked for them

4           earlier, but certainly with more than a month

5           to go in fact discovery.

6                 And had they been produced, I don't know

7           if our expert would have found them to be

8           related or not, whether he would have used them

9           or not, but I think there may be information in

10          them, and he thinks there may be, that's

11          relevant to determining the value of the

12          software at issue, which is a starting point

13          for analysis of a royalty.

14                And they may not be patent licenses.  I

15          haven't seen a patent license in these

16          agreements, but even not patent licenses,

17          software licenses, are considered for -- may be

18          considered comparable technology, which is

19          discovery for an expert's use.

20                As to Mr. Moffa's point that they may

21          need to educate a witness about these

22          agreements, I don't know until we've seen the

23          agreements, but we have several months left of

24          deposition discovery.  Both parties have agreed

25          that depositions may continue until the end of

1          September, whenever the new fact discovery

2          deadline is, roughly October 1st.  So there's

3          plenty of time if there needs to be a

4          deposition.  I'm not sure there will be any.

5          It may just be the agreements.

6                    THE COURT:  All right.  And your

7          brief response, Mr. Moffa?

8                    MR. MOFFA:  I think Mr. Zachary makes

9          my point.  These are agreements about a product

10         that's not at issue, and Mr. Zachary is already

11         identifying how the parties would work to fit

12         in the additional discovery they might bring

13         for it or require if they're produced.  Again,

14         this was a nonissue for a long time when we

15         understood all of ViaTech's requests around

16         this unaccused product had been withdrawn.  To

17         bring them back, resurrect them, because the

18         expert now wants to look at agreements at the

19         11th hour is improper, and we stand on our

20         papers.

21                    THE COURT:  Okay.  I'm trying to

22         understand.  There's a product in the case that

23         was withdrawn as being accused, but the

24         agreement -- there's a feeling by the expert

25         for Plaintiff that it may very well be relevant

1    to the evaluation of what is being sold.  Am I

2    understanding this correctly?

3              MR. ZACHARY:  Yes, Your Honor.  The

4    two technologies are very -- are highly

5    comparable, so that's relevant.

6              THE COURT:  What's relevant in one

7    technology in the agreement that related to a

8    technology in one is one thing.  Then there's

9    the technology and the agreements related to

10   that, Technology 1, Technology 2.  But there's

11   an interrelationship between the two

12   technologies.

13             MR. ZACHARY:  At a high level, that's

14   correct, Your Honor.

15             THE COURT:  Okay.

16             MR. MOFFA:  Your Honor, I'm not sure

17   that we would agree, but I think that is

18   Plaintiff's position.  I'm sorry for

19   interrupting, Your Honor.

20             THE COURT:  I understand that's --

21   I'm trying to understand what the argument is

22   brought by Plaintiff, and you're saying, I

23   guess, Mr. Moffa that they're not.

24             MR. MOFFA:  We do disagree that the

25   technologies are comparable.  I think that's

1      probably the problem, is the expert discovery,

2      but our position is clear.

3           I think what I'm representing, Your

4      Honor, is that the agreements themselves are

5      one step removed from the possible comparable

6      technology.  We already produced all of the

7      patent license agreements that we understood to

8      apply to either technology, either the accused

9      technology or the unaccused, including patent

10     agreements with Company A, the patent license

11     agreements with them, and we'll happily let our

12     experts argue whether the technology is

13     comparable enough that the patent license for

14     one technology applies to a patent license for

15     the other.

16          The agreements here are business

17     agreements, a contract to resell Company A's

18     product as Technology 2, and customer

19     agreements between Adobe and its customers to

20     pay for Technology 2.  That's a step removed

21     from what Adobe thought the patent license rate

22     should be for Technology 1 or 2, and it

23     involves all sorts of new discoverable

24     information about Adobe's customer

25     relationships, the way it markets this product,

1         the way it prices this product, the reason it

2         entered into a resale agreement with Company A,

3         and those aren't related to the patent licenses

4         that we've already -- I'm sorry.  They're not

5         related to the patent issues here in the case.

6         So that is the distinction that I would draw,

7         Your Honor.  Not between Technology 1 and 2 in

8         their substance but the business agreement

9         versus the patent agreement.

10             THE COURT:  Well, the way I look at

11        it is that business agreements help provide

12        information as to how Adobe values its product

13        and, more importantly, how its customers do,

14        and that's a negotiated understanding wherein

15        which through the negotiations, you reach a

16        valuation process.  However, I'm not going to

17        make it.

18             And let me just understand -- also, I'm

19        going to be ordering discovery there, and later

20        on you can deal with the motions in limine, but

21        that's not an issue that I'm addressing now.

22             Let me just understand, though

23        Mr. Zachary, how you came up with maybe five,

24        maybe ten.  I don't know.  I don't know what

25        the basis of that understanding is.

```
1              MR. ZACHARY:  Yes.  Good question,
2        Your Honor.  We had asked for the one agreement
3        that we know of that exists with Company A.
4        And for the customer agreements, we asked for a
5        representative sample, so I'm just assuming
6        that we're in the five to ten range.
7              THE COURT:  All right.  I'm going to
8        allow the discovery in this regard:  I'm going
9        to limit it to five customer agreements.  That
10       should be sufficient to give you some idea.
11       And therefore, as a result of that, if
12       further -- I'm not trying to encourage any more
13       discovery motions, but if there are issues that
14       indicate there may be more, I'll consider them.
15       But right now I'm going to limit you to five
16       customers, and I would suggest that you don't
17       sit there and pick the smallest group you've
18       got.  You start with Customer A, who we've
19       talked about who sounds to be fairly
20       substantial, and, you know, I think you choose
21       the five highest customers.  Cross-reference in
22       that regard.  See where it gets you.  See
23       whether it provides information for valuation
24       purposes.  But I'm trying to -- it's kind of
25       being argued in a vacuum right now.
```

```
 1                     MR. ZACHARY:  Thank you, Your Honor.
 2                     THE COURT:  That's my ruling on that,
 3          and I'll just address the other issues as they
 4          arise, but I don't expect there will be a
 5          multitude of discovery as a result of that.  My
 6          understanding is that the request is being made
 7          towards a damage evaluation, so I don't think
 8          it's necessary to do a whole deposition route
 9          or people within the company explaining these,
10          explaining the valuation process.  You can look
11          at the documents and figure it out yourselves
12          and have your expert look at it and they look
13          at it and say in light of this, this tells us
14          X, Y, and Z.  And their expert can say I
15          disagree and this is the reason why.
16                     MR. MOFFA:  Your Honor, if I may,
17          thank you.  I just -- I wanted to clarify that
18          the Company A we were talking about is not one
19          of the customers.  Company A is a supplier of
20          the product that then Adobe sold, but just to
21          make a clear record.
22                      And, Your Honor, it would help me to
23          understand the Court's tenor on the concern
24          Adobe has which is if we produce this resale
25          agreement and ViaTech seeks no further
```

 1          discovery and their expert opines that this

 2          agreement reflects propositions 1, 2, and 3

 3          supporting a high royalty and Adobe has

 4          information in its possession that would

 5          counter those, we didn't expect it to come or

 6          didn't know what it would be until it showed up

 7          in the export report and then Adobe has

 8          witnesses that say that's not so and it doesn't

 9          stand for 1, 2, and 3 because of this context,

10          the people involved or money actually paid and

11          so on and so forth.  And Adobe would like to be

12          free to present that evidence to its expert and

13          let its expert use that evidence in response

14          and not face a motion to strike or in limine

15          and say that's prejudicial, we didn't have

16          access to that information that Adobe had.  The

17          only solution I see is making it available, and

18          that's the discovery we're trying to avoid.

19                    THE COURT:  I understand what you're

20          saying.

21               Is there any response, Mr. Zachary,

22          before I make any further comment, in light of

23          what Mr. Moffa said?

24                    MR. ZACHARY:  Your Honor, I don't

25          know for sure, but I expect that Your Honor is

1          correct that it's probably just one expert

2          saying one thing and the other side's expert

3          saying something else.  But we don't face that

4          issue.  We haven't seen the agreement.

5          Mr. Moffa and I and our respective teams have

6          been pretty good about working out discovery

7          disputes before they get to the Court.  This is

8          the first discovery motion that we've had in a

9          year-plus of litigation, so we're pretty good

10         about it, and I can't say for sure we will

11         reach an agreement or there's an issue or we

12         won't, but I don't expect this issue will have

13         to come back to the Court.

14                    THE COURT:  Well, I leave it up to

15         the cooperation of counsel in that regard, and

16         certainly I'll make myself available should the

17         issue become larger than what I understood it

18         to be today.

19                    When is the trial in this case?  When is

20         the PTC and when is the trial in this case?

21         Does anybody recall?  It might have actually

22         been in the papers that you submitted.

23                    MS. FARNAN:  Your Honor, the pretrial

24         conference got moved to September 1, 2023.

25                    THE COURT:  Okay.  So it's an issue

1    that could be addressed and the time to address

2    that began with the motion in the case.  I'm

3    not saying it's the tail that wags the dog, but

4    it's a separate, distinct issue from the

5    technical issues that are involved in this

6    case, and I think usually an easier matter to

7    address.  Because no matter what type of case

8    you have, whether it's a patent case, whether

9    it's a personal injury case, whether it's a job

10   discrimination case, there's always damages,

11   and there's not a huge disparity among those

12   various topics, albeit patent cases are a bit

13   more complicated in that regard.  But it's the

14   understanding as to you only make recovery for

15   what you're able to prove, the damages that you

16   will claim tied into the damages that you will

17   claim so likely that's sometime.  I ask counsel

18   to try to work it out.  If you can't, get back

19   to me.

20             MR. ZACHARY:  Very well, Your Honor.

21             MR. MOFFA:  We will, Your Honor.

22   Thank you.

23             THE COURT:  Have we addressed all the

24   issues?  I want to double check.  Is there

25   anything else that were raised in your

1          submissions that we haven't addressed?

2                    MR. MOFFA:  Not for Adobe, Your

3      Honor.

4                    MR. ZACHARY:  Not for ViaTech.

5                    THE COURT:  All right, counsel.

6      Thank you very much, and if there's nothing

7      further, then we're adjourned.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    **C E R T I F I C A T E**

2      STATE OF DELAWARE        )
                                ) ss:
3      COUNTY OF NEW CASTLE     )

4            I, Deanna L. Warner, a Certified

5      Shorthand Reporter, do hereby certify that as

6      such Certified Shorthand Reporter, I was

7      present at and reported in Stenotype shorthand

8      the above and foregoing proceedings in Case

9      Number 20-CV-358-RGA-MPT, *VIATECH TECHNOLOGIES,*

10     *INC. Vs. ADOBE INC.*, heard on August 1, 2022.

11           I further certify that a transcript of

12     my shorthand notes was typed and that the

13     foregoing transcript, consisting of 44

14     typewritten pages, is a true copy of said

15     **DISCOVERY CONFERENCE**.

16           **SIGNED**, **OFFICIALLY SEALED**, and **FILED**

17     with the Clerk of the District Court, NEW

18     CASTLE County, Delaware, this 10th day of

19     August, 2022.

20

21     _____
                        Deanna L. Warner, CSR, #1687
22                      Speedbudget Enterprises, LLC

23

24

25

## #

**#1687** [1] - 44:21

## '

**'22** [1] - 15:6

## 1

**1** [7] - 35:10, 36:22, 37:7, 40:2, 40:9, 41:24, 44:10
**10** [1] - 31:19
**10th** [1] - 44:18
**11th** [1] - 34:19
**12(b** [1] - 19:19
**14th** [1] - 13:19
**15** [1] - 14:7
**15,000** [1] - 13:23
**153** [1] - 26:10
**155** [1] - 26:9
**15th** [1] - 13:4
**16(b** [1] - 23:23
**17-688** [1] - 9:14
**17th** [1] - 13:24
**19-1063** [1] - 9:18
**19th** [1] - 12:22
**1st** [5] - 1:13, 5:4, 5:15, 13:18, 34:2

## 2

**2** [7] - 35:10, 36:18, 36:20, 36:22, 37:7, 40:2, 40:9
**20-CV-358-RGA** [1] - 1:5
**20-CV-358-RGA-MPT** [1] - 44:9
**2017** [1] - 9:15
**2020** [1] - 9:18
**2021** [2] - 14:7, 15:5
**2022** [3] - 1:13, 44:10, 44:19
**2023** [1] - 41:24
**217(f** [2] - 17:7, 23:16
**217S(f** [1] - 21:25
**25th** [2] - 5:6, 12:21
**271(b** [3] - 9:6, 10:6, 23:4
**271(f** [26] - 3:25, 6:3, 6:10, 6:16, 6:19, 6:21, 8:2, 9:8, 10:6, 10:16, 11:24, 12:5, 13:2, 14:1, 15:14, 17:9, 19:5, 19:13,
19:16, 19:23, 20:25, 22:5, 22:9, 23:6, 25:1, 25:14
**271(f)** [6] - 4:18, 5:22, 15:13, 19:4, 22:23, 24:19
**275(b** [1] - 10:4
**28392** [1] - 9:20
**2839224** [1] - 9:19
**2nd** [1] - 5:16

## 3

**3** [2] - 40:2, 40:9
**30(b)(6** [1] - 5:25
**3rd** [1] - 5:16

## 4

**44** [1] - 44:13
**4804264** [1] - 9:15

## 5

**5** [1] - 31:19
**5,000** [1] - 13:18
**59** [1] - 13:9

## 9

**9224** [1] - 9:21

## A

**A's** [1] - 36:17
**able** [1] - 42:15
**access** [1] - 40:16
**accommodation** [1] - 32:10
**accused** [10] - 8:8, 13:13, 13:20, 27:14, 27:21, 27:23, 30:22, 32:14, 34:23, 36:8
**acknowledge** [1] - 12:15
**action** [3] - 9:14, 9:18, 11:20
**activated** [1] - 28:1
**activation** [5] - 27:24, 28:16, 29:12, 29:19
**acts** [1] - 23:7
**actual** [1] - 22:14
**add** [3] - 6:1, 8:14, 21:24
**added** [1] - 17:10
**addition** [1] - 23:22
**additional** [5] - 13:21, 14:18, 17:21, 32:10, 34:12
**address** [10] - 2:21, 7:14, 10:19, 17:16, 19:25, 21:3, 24:2, 39:3, 42:1, 42:7
**addressed** [5] - 24:13, 25:7, 42:1, 42:23, 43:1
**addresses** [2] - 10:16, 12:8
**addressing** [1] - 37:21
**adjourned** [1] - 43:7
**Adobe** [49] - 2:16, 2:18, 3:22, 4:4, 4:5, 5:7, 5:21, 6:9, 7:9, 8:8, 10:22, 12:14, 13:11, 13:18, 13:23, 14:4, 15:7, 16:16, 17:13, 19:15, 20:22, 23:13, 23:15, 24:4, 26:21, 26:22, 27:5, 27:8, 27:12, 28:10, 28:19, 29:5, 29:19, 30:15, 30:23, 31:13, 31:22, 31:24, 36:19, 36:21, 37:12, 39:20, 39:24, 40:3, 40:7, 40:11, 40:16, 43:2
**ADOBE** [2] - 1:7, 44:10
**Adobe's** [12] - 6:6, 6:13, 21:9, 26:5, 27:23, 27:25, 28:1, 28:8, 28:17, 29:12, 30:8, 36:24
**ago** [4] - 13:10, 13:24, 19:10, 31:20
**agree** [2] - 16:19, 35:17
**agreed** [3] - 13:11, 16:9, 33:24
**agreement** [25] - 5:8, 16:12, 18:1, 27:5, 27:10, 27:11, 29:4, 29:9, 29:14, 30:25, 31:10, 31:12, 31:15, 32:21, 34:24, 35:7, 37:2, 37:8, 37:9, 38:2, 39:25, 40:2, 41:4, 41:11
**agreements** [50] - 4:3, 18:4, 18:5, 18:10, 26:13, 26:20, 27:7, 27:19, 29:15, 29:17, 29:22, 29:23, 30:1, 30:4, 30:12, 30:14, 30:15, 30:16, 30:19, 30:25, 31:2, 31:9,
31:16, 31:17, 31:19, 31:21, 31:23, 31:25, 32:6, 32:11, 32:22, 32:24, 33:16, 33:22, 33:23, 34:5, 34:9, 34:18, 35:9, 36:4, 36:7, 36:10, 36:11, 36:16, 36:17, 36:19, 37:11, 38:4, 38:9
**ahead** [2] - 12:11, 18:17
**albeit** [1] - 42:12
**alignment** [1] - 19:14
**allegation** [6] - 10:9, 10:12, 15:13, 19:8, 23:12, 23:16
**allegations** [10] - 9:6, 11:25, 14:1, 19:1, 19:5, 22:5, 22:9, 22:14, 30:20, 32:16
**allege** [1] - 9:7
**alleged** [4] - 6:17, 7:14, 20:18, 22:19
**allegedly** [2] - 10:11, 23:9
**allow** [1] - 38:8
**allowed** [1] - 22:12
**almost** [1] - 13:24
**alone** [1] - 23:15
**amend** [6] - 10:25, 14:9, 15:23, 23:20, 23:24, 24:9
**amending** [1] - 25:17
**amendment** [1] - 22:1
**amendments** [1] - 13:6
**American** [1] - 23:9
**amount** [1] - 25:8
**analysis** [1] - 33:13
**AND** [1] - 1:2
**Andrew** [1] - 2:8
**ANDREW** [1] - 1:15
**Andrews** [3] - 5:11, 16:7, 16:20
**anticipation** [1] - 23:25
**apologize** [2] - 21:4, 21:12
**APPEARANCES** [1] - 1:14
**applies** [1] - 36:14
**apply** [1] - 36:8
**appreciate** [1] - 3:4
**appropriately** [3] - 17:17, 27:1, 30:11
**April** [9] - 5:6, 10:23, 12:21, 12:22, 13:7, 14:11, 15:6, 15:20, 17:10
**argue** [1] - 36:12

**argued** [1] - 38:25
**argument** [7] - 17:22, 18:8, 20:23, 21:11, 25:22, 29:24, 35:21
**arguments** [7] - 2:12, 3:13, 16:10, 17:9, 21:18, 22:4, 24:14
**arise** [1] - 39:4
**articulate** [2] - 11:2, 17:8
**articulated** [4] - 13:3, 14:7, 22:14, 23:3
**ASHBY** [1] - 1:15
**assemble** [1] - 10:13
**assembling** [2] - 23:11, 23:14
**associated** [1] - 29:4
**assuming** [1] - 38:5
**attempt** [1] - 21:24
**August** [4] - 1:13, 13:24, 44:10, 44:19
**authorities** [2] - 8:24, 10:18
**authority** [1] - 9:16
**authorized** [1] - 28:6
**available** [2] - 40:17, 41:16
**avoid** [1] - 40:18
**aware** [1] - 31:20

## B

**based** [2] - 14:1, 14:3
**basis** [1] - 37:25
**became** [2] - 16:1, 32:25
**become** [2] - 24:7, 41:17
**began** [1] - 42:2
**begin** [2] - 2:3, 17:2
**behalf** [4] - 2:8, 2:13, 2:16, 2:18
**best** [1] - 13:25
**better** [1] - 27:3
**between** [8] - 9:10, 12:6, 14:23, 16:1, 17:4, 20:3, 20:16, 25:10, 26:21, 27:5, 27:7, 28:14, 29:5, 35:11, 36:19, 37:7
**beyond** [1] - 28:5
**bit** [1] - 42:12
**blackletter** [1] - 23:6
**boils** [1] - 15:12
**bottom** [1] - 11:15
**brief** [19] - 6:13, 7:22, 8:25, 9:1, 11:6, 11:10, 11:14, 11:22, 12:13, 12:14, 12:18,

21:13, 22:9, 24:1, 24:6, 30:9, 30:13, 34:7
**briefed** [1] - 6:8
**briefs** [2] - 21:7, 23:1
**bring** [2] - 34:12, 34:17
**broader** [1] - 30:22
**brought** [3] - 18:1, 22:22, 35:22
**Bunsow** [1] - 2:10
**BUNSOW** [1] - 1:17
**burden** [7] - 7:10, 7:14, 16:13
**burdensome** [3] - 25:22, 29:24, 32:6
**Burke** [2] - 10:1, 10:2
**business** [6] - 31:9, 31:15, 31:23, 36:16, 37:8, 37:11
**BY** [1] - 1:15

## C

**calculating** [1] - 29:18
**calculations** [1] - 30:6
**case** [46] - 6:10, 8:2, 8:19, 9:4, 9:13, 9:14, 9:25, 10:1, 10:3, 12:8, 12:21, 13:3, 16:5, 17:17, 19:12, 20:10, 20:12, 20:21, 20:25, 22:4, 23:2, 23:12, 24:16, 24:25, 25:4, 26:3, 26:22, 27:18, 27:21, 27:23, 29:17, 31:1, 31:8, 31:22, 32:7, 32:15, 34:22, 37:5, 41:19, 41:20, 42:2, 42:6, 42:7, 42:8, 42:9, 42:10
**Case** [2] - 1:5, 44:8
**cases** [20] - 6:13, 7:6, 7:8, 7:21, 7:25, 8:5, 9:6, 9:11, 9:22, 10:18, 18:21, 18:24, 19:4, 19:14, 19:22, 19:23, 20:16, 22:23, 22:25, 42:12
**CASTLE** [2] - 44:3, 44:18
**certain** [1] - 25:10
**certainly** [3] - 13:3, 33:4, 41:16
**Certified** [2] - 44:4, 44:6
**certify** [2] - 44:5, 44:11

**challenge** [1] - 19:16
**chance** [1] - 18:23
**change** [1] - 20:16
**check** [1] - 42:24
**choose** [1] - 38:20
**circuit** [1] - 20:21
**citation** [2] - 9:15, 9:18
**cite** [2] - 9:12, 22:24
**cited** [10] - 6:9, 6:13, 7:22, 8:19, 8:25, 9:1, 18:20, 18:22, 19:22, 19:24
**cites** [1] - 10:19
**civil** [2] - 9:14, 9:18
**claim** [11] - 11:24, 12:5, 16:2, 17:7, 19:4, 19:16, 22:23, 23:3, 23:5, 42:16, 42:17
**claims** [2] - 16:18, 21:24
**clarify** [2] - 21:10, 39:17
**clear** [3] - 22:3, 36:2, 39:21
**clearly** [2] - 22:7, 32:15
**Clerk** [1] - 44:17
**clerk** [1] - 3:5
**close** [4] - 14:24, 17:1, 20:4, 20:6
**co** [2] - 2:10, 2:19
**co-counsel** [2] - 2:10, 2:19
**code** [3] - 13:13, 13:20, 28:19
**COIE** [1] - 1:23
**Coie** [1] - 2:19
**colleague** [1] - 33:2
**comfortable** [1] - 24:18
**comment** [1] - 40:22
**company** [15] - 26:22, 27:5, 27:10, 29:5, 30:17, 31:10, 31:12, 31:14, 36:10, 36:17, 37:2, 38:3, 39:9, 39:18, 39:19
**comparable** [9] - 27:22, 28:15, 29:2, 33:18, 35:5, 35:25, 36:5, 36:13
**complains** [1] - 15:12
**complaint** [24] - 6:3, 6:23, 6:25, 8:2, 11:20, 11:23, 12:4, 12:6, 12:7, 15:12, 15:15, 15:25, 16:2, 16:8, 16:10, 16:11,

16:17, 17:7, 21:23, 23:17, 23:20, 24:9, 25:17
**complete** [1] - 14:25, 15:4
**completely** [1] - 21:13
**complicated** [1] - 42:13
**component** [2] - 4:10, 29:11
**components** [4] - 10:13, 10:14, 23:11, 23:14
**conceded** [1] - 29:22
**concededly** [1] - 31:18
**concern** [1] - 39:23
**concerning** [4] - 4:23, 7:1, 7:10, 24:19
**concerns** [3] - 3:21, 4:2, 27:11
**conclusory** [1] - 22:10
**confer** [2] - 7:13, 33:1
**conference** [1] - 41:24
**CONFERENCE** [3] - 1:9, 1:11, 44:15
**confluent** [2] - 9:13, 9:25
**conform** [2] - 11:24, 12:3
**Connolly** [1] - 10:2
**consider** [1] - 38:14
**considerable** [1] - 6:24
**considered** [2] - 33:17, 33:18
**consisted** [1] - 5:22
**consisting** [1] - 44:13
**contend** [3] - 3:24, 27:6, 27:8
**contends** [3] - 3:24, 4:3
**contention** [6] - 6:6, 14:19, 15:2, 15:7, 19:8, 20:3
**contentions** [37] - 3:22, 4:17, 4:20, 4:21, 4:23, 5:5, 5:20, 7:1, 8:4, 9:3, 11:4, 12:1, 12:3, 12:6, 12:17, 12:20, 12:23, 12:25, 13:2, 13:5, 13:16, 14:6, 14:8, 14:20, 14:24, 15:2, 15:18, 19:9, 20:9, 20:14, 20:17, 22:6, 22:11, 22:17, 22:20, 22:21, 25:25
**context** [3] - 12:25, 31:24, 40:9

**continue** [1] - 33:25
**contract** [1] - 36:17
**contributory** [7] - 6:12, 6:18, 6:20, 7:2, 9:8, 19:2, 25:1
**cooperation** [1] - 41:15
**copy** [4] - 3:4, 28:4, 28:5, 44:14
**core** [2] - 13:12, 13:19
**correct** [6] - 3:18, 18:6, 21:5, 21:21, 35:14, 41:1
**correctly** [3] - 19:6, 21:8, 35:2
**counsel** [6] - 1:19, 2:10, 2:19, 41:15, 42:17, 43:5
**Counsel** [1] - 1:25
**counter** [2] - 18:16, 40:5
**counterfeiting** [1] - 28:3
**County** [1] - 44:18
**COUNTY** [1] - 44:3
**course** [3] - 2:7, 8:24, 19:18
**COURT** [44] - 1:1, 2:1, 2:14, 2:22, 3:2, 4:8, 4:11, 5:1, 5:13, 5:17, 6:2, 8:12, 8:15, 8:18, 9:20, 9:22, 11:8, 11:11, 11:16, 12:11, 15:22, 16:4, 16:23, 17:18, 17:24, 18:9, 18:15, 21:15, 24:15, 30:7, 32:17, 34:6, 34:21, 35:6, 35:15, 35:20, 37:10, 38:7, 39:2, 40:19, 41:14, 41:25, 42:23, 43:5
**court** [3] - 2:23, 2:24, 10:3
**Court** [24] - 2:21, 3:20, 6:13, 7:16, 7:19, 7:23, 8:5, 9:9, 9:23, 10:5, 11:5, 14:21, 15:16, 16:14, 21:4, 21:12, 21:20, 22:7, 23:7, 30:3, 41:7, 41:13, 44:17
**Court's** [2] - 21:25, 39:23
**create** [2] - 10:15, 23:14
**cross** [3] - 3:11, 32:2, 38:21
**cross-examination** [1] - 32:2
**cross-issues** [1] -

3:11
**cross-reference** [1] - 38:21
**crossed** [1] - 24:20
**CSR** [1] - 44:21
**cured** [1] - 24:5
**current** [3] - 12:3, 12:4
**customer** [8] - 10:10, 10:24, 31:17, 36:18, 36:24, 38:4, 38:9, 38:18
**customers** [7] - 27:8, 29:20, 36:19, 37:13, 38:16, 38:21, 39:19

## D

**damage** [1] - 39:7
**damages** [7] - 4:4, 27:6, 28:24, 29:18, 42:10, 42:15, 42:16
**Daniel** [1] - 3:5
**date** [5] - 5:9, 5:10, 20:3, 20:15
**dates** [1] - 21:11
**DE** [1] - 1:17
**De** [1] - 2:10
**deadline** [15] - 4:20, 4:22, 5:2, 5:4, 5:6, 13:5, 14:8, 14:9, 14:24, 15:2, 15:3, 15:7, 17:3, 21:25, 34:2
**deal** [3] - 4:11, 19:4, 37:20
**dealing** [1] - 24:21
**dealt** [1] - 7:23
**Deanna** [4] - 2:25, 3:4, 44:4, 44:21
**decided** [1] - 9:23
**deciding** [1] - 16:20
**decision** [1] - 23:19
**decisions** [1] - 10:7
**deepen** [1] - 20:11
**Defendant** [2] - 1:8, 1:25
**defendant** [5] - 10:10, 10:12, 20:22, 26:1, 29:25
**Defendant's** [1] - 17:6
**deficient** [1] - 22:21
**Delaware** [1] - 44:18
**DELAWARE** [2] - 1:2, 44:2
**denied** [1] - 26:11
**deny** [1] - 25:19
**denying** [1] - 26:4
**deposition** [4] - 5:25, 33:24, 34:4, 39:8

**depositions** [1] - 33:25
**depriving** [1] - 22:16
**detail** [2] - 6:24, 11:2
**detailed** [2] - 13:11, 19:2
**determining** [2] - 29:11, 33:11
**DI** [1] - 26:8
**difference** [3] - 9:10, 10:17, 24:24
**differences** [1] - 28:14
**different** [4] - 10:12, 23:8, 23:10, 25:3
**difficult** [1] - 28:21
**digital** [2] - 27:13, 29:16
**directly** [1] - 25:24
**disagree** [2] - 35:24, 39:15
**disagrees** [1] - 16:18
**discoverable** [3] - 30:1, 30:2, 36:23
**discovery** [55] - 3:21, 4:6, 4:22, 4:23, 5:2, 5:4, 5:6, 5:9, 5:20, 5:22, 7:10, 7:16, 7:24, 8:6, 8:11, 12:15, 12:22, 13:15, 13:17, 14:10, 14:19, 14:23, 14:25, 15:6, 16:24, 17:2, 19:22, 20:5, 20:7, 22:11, 22:13, 22:16, 25:8, 25:24, 26:5, 30:21, 31:4, 31:7, 32:10, 32:24, 33:5, 33:19, 33:24, 34:1, 34:12, 36:1, 37:19, 38:8, 38:13, 39:5, 40:1, 40:18, 41:6, 41:8
**DISCOVERY** [3] - 1:9, 1:11, 44:15
**discrimination** [1] - 42:10
**discussed** [1] - 18:2
**discussion** [4] - 3:8, 7:12, 24:3, 26:24
**discussions** [1] - 33:1
**dismiss** [5] - 16:1, 16:8, 16:21, 19:15, 21:22
**disparity** [1] - 42:11
**dispute** [1] - 15:11
**disputed** [1] - 11:21
**disputes** [1] - 41:7
**distinct** [2] - 24:17, 42:4
**distinction** [1] - 37:6
**distributed** [1] - 28:12

**DISTRICT** [2] - 1:1, 1:2
**District** [1] - 44:17
**diversity** [1] - 6:14
**docket** [1] - 13:9
**docketed** [1] - 3:8
**document** [2] - 5:23, 15:4
**documents** [5] - 13:12, 13:19, 13:22, 14:4, 39:11
**dog** [1] - 42:3
**done** [4] - 11:3, 14:12, 16:24, 25:16
**double** [1] - 42:24
**down** [2] - 7:5, 15:12
**draw** [2] - 32:4, 37:6
**DRM** [6] - 27:12, 27:13, 28:7, 28:12, 29:20, 31:14
**due** [4] - 12:17, 12:21, 12:24, 16:25
**during** [2] - 4:24, 7:12

**E**

**early** [2] - 13:17, 33:1
**easier** [1] - 42:6
**economist** [1] - 28:23
**educate** [1] - 33:21
**either** [4] - 8:4, 16:3, 36:8
**elected** [1] - 27:17
**emphasize** [1] - 13:1
**enable** [1] - 4:22
**enacted** [1] - 24:22
**encourage** [1] - 38:12
**end** [3] - 15:8, 32:7, 33:25
**engender** [1] - 32:11
**entered** [1] - 37:2
**Enterprises** [1] - 44:22
**entirely** [4] - 10:11, 12:20, 14:12, 25:18
**error** [3] - 12:13, 21:7, 21:13
**ESQ** [4] - 1:15, 1:18, 1:18, 1:21, 1:24
**evaluation** [2] - 35:1, 39:7
**evidence** [2] - 40:12, 40:13
**exactly** [1] - 25:9
**examination** [1] - 22:2
**excuse** [2] - 4:15, 22:5
**exists** [1] - 38:3
**expect** [4] - 39:4, 40:5, 40:25, 41:12
**expert** [22] - 11:3,

14:14, 16:23, 16:25, 17:2, 17:13, 22:15, 28:24, 30:4, 31:5, 32:4, 33:7, 34:18, 34:24, 36:1, 39:12, 39:14, 40:1, 40:12, 40:13, 41:1, 41:2
**expert's** [1] - 33:19
**experts** [1] - 36:12
**explain** [4] - 9:10, 22:9, 22:12, 27:13
**explaining** [2] - 39:9, 39:10
**explicitly** [3] - 6:4, 6:5, 6:22
**export** [1] - 40:7
**exporting** [1] - 4:9
**express** [1] - 11:23
**expressly** [1] - 21:23
**extended** [3] - 5:7, 5:13, 20:6
**extension** [1] - 5:7
**extent** [1] - 25:13
**extremely** [1] - 27:21

**F**

**face** [2] - 40:14, 41:3
**fact** [17] - 4:22, 5:2, 5:3, 5:6, 6:23, 8:18, 10:20, 11:19, 14:23, 14:25, 15:25, 17:1, 20:5, 20:6, 20:18, 33:5, 34:1
**factors** [1] - 23:21
**facts** [1] - 15:14
**factual** [1] - 10:9
**fails** [1] - 12:14
**fair** [1] - 8:10
**fairly** [1] - 38:19
**familiar** [2] - 18:21, 23:19
**familiarity** [1] - 25:3
**FARNAN** [3] - 1:21, 2:17, 41:23
**Farnan** [1] - 2:15
**felt** [1] - 24:12
**few** [1] - 14:23
**figure** [1] - 39:11
**filed** [6] - 11:20, 15:25, 16:17, 19:15, 23:1, 27:1
**FILED** [1] - 44:16
**final** [21] - 4:16, 4:20, 4:21, 5:4, 5:9, 5:19, 11:25, 12:16, 12:18, 12:20, 12:25, 14:24, 15:1, 15:2, 15:7, 20:3, 20:9, 20:14,

21:16, 22:17
**finally** [1] - 23:18
**fine** [1] - 15:17
**FINGER** [1] - 1:21
**finished** [1] - 8:12
**first** [19] - 3:20, 4:12, 4:15, 4:16, 9:12, 16:8, 16:20, 18:3, 18:12, 18:20, 19:11, 21:11, 21:22, 24:10, 24:17, 24:18, 27:11, 30:11, 41:8
**fit** [1] - 34:11
**five** [8] - 20:5, 26:20, 32:6, 37:23, 38:6, 38:9, 38:15, 38:21
**flesh** [1] - 7:18
**fleshed** [2] - 7:15, 19:11
**focused** [1] - 3:11
**followed** [1] - 15:19
**footnote** [1] - 11:6, 11:7, 11:15
**FOR** [1] - 1:2
**foregoing** [2] - 44:8, 44:13
**foreign** [4] - 3:23, 4:6, 8:5, 10:13
**forth** [1] - 40:11
**four** [1] - 12:18
**free** [1] - 40:12
**fully** [1] - 7:15
**function** [1] - 28:7
**fungible** [1] - 14:14

**G**

**game** [1] - 25:19
**gap** [1] - 17:4
**GEDDES** [1] - 1:15
**general** [1] - 19:1
**generally** [1] - 8:7
**given** [1] - 28:4
**granted** [1] - 26:6
**group** [1] - 38:17
**guess** [1] - 35:23

**H**

**half** [1] - 13:10
**hamstrung** [1] - 22:25
**handed** [1] - 22:25
**handful** [3] - 5:23, 26:19, 29:21
**happily** [1] - 36:11
**happy** [2] - 7:13, 8:22
**hear** [1] - 20:17
**heard** [6] - 2:4, 2:15,

19:6, 19:12, 20:1, 44:10
**hearing** [2] - 7:11, 24:1
**held** [2] - 9:2, 14:4
**help** [2] - 37:11, 39:22
**hereby** [1] - 44:5
**high** [3] - 7:12, 35:13, 40:3
**high-level** [1] - 7:12
**highest** [1] - 38:21
**highly** [1] - 35:4
**holding** [1] - 6:15
**Honor** [58] - 2:8, 2:18, 3:17, 3:18, 4:14, 6:5, 7:17, 8:14, 8:17, 8:23, 9:5, 9:9, 9:12, 9:16, 10:9, 10:18, 10:21, 11:5, 11:18, 12:2, 12:8, 12:19, 13:1, 13:8, 13:25, 15:21, 15:24, 17:4, 17:20, 18:7, 18:12, 18:19, 21:17, 22:8, 22:19, 22:23, 23:18, 24:11, 26:17, 30:10, 31:18, 32:20, 35:3, 35:14, 35:16, 35:19, 36:4, 37:7, 38:2, 39:1, 39:16, 39:22, 40:24, 40:25, 41:23, 42:20, 42:21, 43:3
**Honorable** [1] - 1:12
**hope** [1] - 26:9
**hour** [1] - 34:19
**huge** [1] - 42:11
**hyperbranch** [1] - 9:13

**I**

**idea** [1] - 38:10
**identified** [1] - 24:7
**identify** [1] - 32:1
**identifying** [2] - 10:14, 34:11
**imagine** [1] - 2:23
**implied** [1] - 6:23
**important** [1] - 17:3
**importantly** [1] - 37:13
**improper** [2] - 21:24, 34:19
**improperly** [1] - 22:22
**IN** [2] - 1:1, 1:2
**inadequate** [1] - 19:9
**inadvertent** [1] - 21:14
**INC** [4] - 1:3, 1:7, 44:10
**include** [2] - 19:13,

25:1
**included** [2] - 6:3, 29:17
**includes** [1] - 11:23
**including** [2] - 13:12, 36:9
**incorrect** [2] - 12:20, 24:5
**incorrectly** [1] - 21:9
**incredibly** [1] - 21:17
**indeed** [1] - 32:22
**independent** [1] - 28:18
**indicate** [2] - 19:24, 38:14
**indicating** [1] - 7:7
**induced** [6] - 6:11, 6:17, 6:19, 7:1, 10:10, 10:13
**inducement** [4] - 6:11, 9:7, 19:2, 23:3
**inducing** [1] - 23:15
**inferences** [1] - 32:3
**information** [8] - 29:6, 31:23, 33:9, 36:24, 37:12, 38:23, 40:4, 40:16
**infringement** [40] - 3:23, 4:7, 4:17, 4:18, 5:5, 5:20, 5:21, 6:11, 6:12, 6:17, 6:18, 6:20, 6:25, 7:2, 7:3, 8:4, 9:8, 10:4, 10:23, 11:4, 12:1, 12:17, 13:5, 13:16, 14:13, 15:9, 15:16, 17:5, 17:11, 19:1, 19:3, 20:3, 20:9, 20:14, 24:22, 25:2, 25:25, 27:18, 30:20
**infringes** [1] - 3:22
**infringing** [4] - 10:11, 10:15, 23:9, 27:15
**initial** [8] - 4:19, 6:25, 9:1, 13:5, 13:15, 13:22, 14:8, 19:19
**injury** [1] - 42:9
**instead** [1] - 28:8
**insufficient** [1] - 22:7
**internally** [1] - 31:25
**interrelationship** [1] - 35:11
**interrogatories** [1] - 5:23
**interrupting** [1] - 35:19
⬛ [1] - 26:22
**introduce** [2] - 2:5, 2:24
**investigate** [1] - 31:25

**involve** [1] - 16:20
**involved** [4] - 24:16, 25:9, 40:10, 42:5
**involves** [1] - 36:23
**Iqbal** [5] - 10:7, 10:19, 10:21, 11:1, 14:15
**issue** [37] - 3:20, 4:2, 4:12, 4:15, 4:16, 6:8, 7:4, 7:19, 7:20, 7:23, 9:3, 12:22, 16:7, 18:25, 19:7, 19:20, 19:21, 20:1, 20:8, 21:1, 21:2, 24:8, 24:16, 24:19, 25:14, 26:3, 26:12, 26:16, 33:12, 34:10, 37:21, 41:4, 41:11, 41:12, 41:17, 41:25, 42:4
**issues** [13] - 3:9, 3:11, 3:12, 3:19, 3:20, 7:10, 17:25, 20:12, 37:5, 38:13, 39:3, 42:5, 42:24
**itself** [1] - 29:10

## J

**job** [2] - 28:20, 42:9
**joined** [2] - 2:9, 2:19
**Judge** [4] - 2:2, 5:11, 16:7, 16:20
**judges** [1] - 9:25, 10:1
**July** [3] - 5:4, 13:18, 13:19
**jurisdiction** [1] - 9:23
**jurisdictions** [1] - 6:14

## K

**KELLY** [1] - 1:21
**kind** [3] - 20:19, 25:4, 38:24
**knows** [1] - 12:2

## L

**lack** [1] - 22:10
**larger** [1] - 41:17
**last** [4] - 13:4, 14:3, 18:16, 21:6
**last-minute** [1] - 14:3
**late** [3] - 15:21, 24:8, 26:4
**law** [4] - 3:5, 8:19, 12:9, 23:2
**LAYTON** [1] - 1:21
**learn** [1] - 20:10
**learned** [1] - 25:15

**least** [3] - 16:13, 20:16, 33:1
**leave** [4] - 15:23, 16:3, 32:9, 41:14
**leaves** [2] - 14:13, 15:7
**left** [1] - 33:23
**less** [2] - 12:23, 26:20
**letter** [1] - 11:13
**level** [3] - 7:12, 20:24, 35:13
**license** [11] - 28:6, 30:12, 30:15, 30:16, 31:11, 33:15, 36:7, 36:10, 36:13, 36:14, 36:21
**licenses** [6] - 29:19, 31:12, 33:14, 33:16, 33:17, 37:3
**light** [3] - 7:24, 39:13, 40:22
**likely** [1] - 42:17
**limine** [1] - 37:20, 40:14
**limit** [2] - 38:9, 38:15
**LIN** [1] - 1:18
**Lin** [2] - 2:11, 33:2
**line** [3] - 2:11, 2:16, 33:2
**litigation** [1] - 41:9
**LLC** [1] - 44:22
**LLP** [2] - 1:17, 1:23
**look** [6] - 29:1, 34:18, 37:10, 39:10, 39:12
**looked** [1] - 25:4
**looking** [2] - 12:19, 13:8

## M

**maintains** [1] - 16:16
**management** [2] - 27:14, 29:16
**markets** [1] - 36:25
**Mary** [1] - 1:12
**materials** [1] - 14:2
**matter** [3] - 25:19, 42:6, 42:7
**MATTHEW** [1] - 1:24
**Matthew** [1] - 2:20
**MAYO** [3] - 1:15, 2:7, 26:23
**mayo** [1] - 2:4
**Mayo** [1] - 2:8
**mean** [1] - 28:2
**meet** [3] - 7:13, 20:23, 33:1
**meet-and-confer** [2] - 7:13, 33:1

**mention** [2] - 4:5, 10:23
**mentioned** [4] - 7:22, 8:1, 8:3, 21:5
**met** [1] - 20:4
**method** [1] - 8:10
**methods** [1] - 8:7
**Michael** [2] - 2:11, 26:18
**MICHAEL** [1] - 1:18
**might** [8] - 5:14, 23:22, 23:25, 27:2, 29:7, 29:8, 34:12, 41:21
**mind** [2] - 2:3, 24:20
**minute** [3] - 5:1, 11:8, 14:3
**misrepresentations** [1] - 21:20
**modification** [2] - 5:24
**MOFFA** [21] - 1:24, 8:17, 8:22, 9:21, 9:24, 11:9, 11:12, 11:18, 12:12, 15:24, 16:6, 16:25, 17:20, 21:17, 30:9, 34:8, 35:16, 35:24, 39:16, 42:21, 43:2
**MOFFA** [16] - 2:20, 8:16, 17:19, 18:13, 18:20, 19:6, 19:10, 21:5, 21:7, 21:16, 25:12, 34:7, 35:23, 40:23, 41:5
**Moffa's** [1] - 33:20
**moment** [2] - 18:13, 19:10
**money** [1] - 40:10
**month** [4] - 4:24, 4:25, 17:1, 33:4
**months** [7] - 4:21, 5:11, 12:16, 20:2, 20:6, 31:20, 33:23
**morning** [6] - 2:1, 2:2, 2:8, 2:17, 2:21, 3:16
**Mory** [1] - 2:10
**MORY** [1] - 1:17
**motion** [19] - 6:6, 16:1, 16:8, 16:14, 16:21, 16:22, 19:15, 19:19, 21:9, 21:10, 21:22, 22:2, 22:20, 26:5, 26:7, 26:10, 40:14, 41:8, 42:2
**motions** [2] - 37:20, 38:13
**move** [1] - 5:9
**moved** [4] - 5:10, 23:20, 23:24, 41:24
**MPT** [1] - 1:6

**MR** [43] - 2:7, 3:16, 4:9, 4:13, 5:3, 5:14, 5:18, 6:4, 8:13, 8:17, 8:22, 9:21, 9:24, 11:9, 11:12, 11:18, 12:12, 15:24, 16:6, 16:25, 17:20, 18:6, 18:12, 18:18, 21:17, 26:17, 26:23, 27:4, 30:9, 32:19, 34:8, 35:3, 35:13, 35:16, 35:24, 38:1, 39:1, 39:16, 40:24, 42:20, 42:21, 43:2, 43:4
**MS** [2] - 2:17, 41:23
**multitude** [1] - 39:5
**must** [1] - 26:19

## N

**naming** [1] - 26:25
**necessary** [1] - 39:8
**need** [6] - 6:8, 6:10, 6:15, 7:7, 7:9, 33:21
**needed** [3] - 4:24, 6:7, 24:12
**needs** [4] - 7:5, 19:10, 31:8, 34:3
**negotiated** [2] - 13:10, 37:14
**negotiations** [1] - 37:15
**networks** [1] - 9:17
**never** [10] - 15:9, 16:16, 17:6, 17:8, 20:22, 23:12, 23:24, 24:2, 24:9, 32:23
**NEW** [2] - 44:3, 44:17
**new** [7] - 14:19, 15:5, 15:6, 15:15, 17:12, 34:1, 36:23
**night** [1] - 21:6
**nobody** [1] - 26:2
**non** [1] - 15:1
**nonissue** [1] - 34:14
**notes** [1] - 44:12
**nothing** [2] - 14:5, 43:6
**notice** [7] - 5:25, 19:3, 22:16, 23:5, 26:1, 26:2, 30:24
**November** [1] - 17:3
**Number** [1] - 44:9
**number** [7] - 3:9, 3:19, 13:9, 21:19, 26:8, 26:10, 32:22
**numbers** [1] - 27:16

**O**

object [1] - 7:17
occur [1] - 5:2
October [3] - 5:15, 5:16, 34:2
OF [4] - 1:2, 1:9, 44:2, 44:3
offer [1] - 32:1
OFFICIALLY [1] - 44:16
one [16] - 8:2, 12:9, 18:2, 24:17, 26:22, 27:14, 29:1, 35:6, 35:8, 36:5, 36:14, 38:2, 39:18, 41:1, 41:2
opening [3] - 17:5, 18:22, 23:1
opines [1] - 40:1
opportunity [1] - 14:17
order [4] - 4:19, 13:9, 13:15, 20:13
ordering [1] - 37:19
orderly [1] - 16:19
orders [1] - 7:16
original [5] - 5:3, 6:3, 17:17, 20:4, 30:13
otherwise [2] - 24:13, 32:9
outset [3] - 13:11, 21:6, 31:1
outside [3] - 14:2, 23:10, 23:13
outstanding [1] - 5:25
overseas [2] - 8:9, 10:15
own [1] - 28:8

**P**

P.A [2] - 1:15, 1:21
page [7] - 11:11, 11:14, 11:15, 12:18, 22:8, 24:1, 24:5
pages [3] - 13:18, 13:23, 44:14
paid [1] - 40:10
papers [5] - 12:10, 18:22, 24:3, 34:20, 41:22
paragraph [1] - 12:18
paragraphs [1] - 17:10
part [3] - 5:8, 28:16, 28:18
particularly [2] - 8:18, 32:13

parties [13] - 7:18, 11:21, 13:10, 15:3, 16:6, 16:9, 16:12, 16:19, 22:24, 26:25, 28:9, 33:24, 34:11
parties' [1] - 15:11
party [2] - 10:13, 28:10
pass [3] - 11:1, 14:15, 14:16
Pat [1] - 1:12
patent [19] - 3:22, 3:25, 30:15, 31:11, 33:14, 33:15, 33:16, 36:7, 36:9, 36:10, 36:13, 36:14, 36:21, 37:3, 37:5, 37:9, 42:8, 42:12
pay [1] - 36:20
pennypack [6] - 20:21, 20:23, 23:19, 23:21, 24:2, 24:7
Pennypack [1] - 25:4
people [2] - 39:9, 40:10
perfectly [1] - 15:17
perhaps [1] - 7:18
period [2] - 4:24, 4:25
PERKINS [1] - 1:23
Perkins [1] - 2:19
permit [1] - 7:24
permitted [1] - 8:5
personal [1] - 42:9
phone [1] - 25:23
pick [1] - 38:17
piece [1] - 27:7
piracy [1] - 28:3
place [1] - 24:10
plain [1] - 32:5
Plaintiff [2] - 1:4, 1:19
plaintiff [13] - 2:9, 10:3, 11:19, 11:22, 12:2, 13:14, 17:6, 17:8, 25:16, 25:20, 28:20, 34:25, 35:22
plaintiff's [8] - 11:6, 11:13, 12:10, 12:13, 17:5, 17:11, 31:5, 35:18
plaintiffs [3] - 2:13, 8:1, 23:2
plea [1] - 10:8
plead [4] - 6:10, 6:11, 6:15, 15:10
pleaded [6] - 6:7, 6:9, 6:22, 7:5, 7:7, 7:9
pleading [4] - 10:8, 10:25, 13:6, 14:16
pleadings [5] - 7:25, 10:5, 14:9, 21:2,

22:1
pled [2] - 10:4, 22:22
plenty [1] - 34:3
plus [1] - 41:9
point [20] - 9:5, 11:5, 12:9, 12:10, 12:25, 14:11, 14:22, 17:23, 18:7, 18:10, 18:20, 22:24, 23:24, 25:24, 30:23, 31:5, 31:21, 33:12, 33:20, 34:9
points [1] - 24:11
position [4] - 22:2, 32:5, 35:18, 36:2
possession [1] - 40:4
possible [2] - 26:24, 36:5
potential [1] - 25:13
potentially [1] - 32:1
practice [1] - 16:14
precise [1] - 18:25
predate [1] - 10:21
predominantly [1] - 3:12
prejudice [5] - 19:25, 20:2, 20:18, 20:24, 24:4
prejudiced [1] - 10:22
prejudicial [3] - 14:13, 31:7, 40:15
preliminary [2] - 8:3, 20:9
present [2] - 40:12, 44:7
presented [2] - 17:15, 18:8
presenting [1] - 2:12
preserve [1] - 16:10
presided [1] - 10:2
pretrial [1] - 41:23
pretty [2] - 41:6, 41:9
prices [1] - 37:1
pricing [3] - 29:4, 29:6, 29:7
problem [1] - 36:1
proceed [1] - 3:15
proceedings [1] - 44:8
process [3] - 7:15, 37:16, 39:10
produce [4] - 31:22, 32:7, 32:12, 39:24
produced [13] - 4:4, 4:6, 13:18, 13:20, 13:23, 18:5, 18:11, 26:14, 30:16, 31:11, 33:6, 34:13, 36:6
producing [1] - 14:5
product [21] - 10:11, 10:15, 23:9, 23:11, 23:14, 28:18, 28:20,

28:22, 30:18, 30:24, 31:13, 31:14, 32:14, 34:9, 34:16, 34:22, 36:18, 36:25, 37:1, 37:12, 39:20
production [2] - 13:23, 15:5, 29:23
products [12] - 8:8, 13:13, 13:21, 27:20, 27:25, 28:1, 28:8, 28:11, 29:13, 30:22, 31:3
proper [3] - 11:22, 16:11, 19:22
proportional [1] - 31:8
proposed [1] - 7:11
propositions [1] - 40:2
protect [5] - 27:25, 28:2, 28:9, 28:11
protecting [1] - 28:8
protects [1] - 29:12
prove [1] - 42:15
provide [4] - 13:11, 17:7, 22:18, 37:11
provided [1] - 4:19
provides [1] - 38:23
PTC [1] - 41:20
public [1] - 27:2
purpose [1] - 24:23
purposes [1] - 38:24
pursue [2] - 22:12, 27:17
put [4] - 19:14, 21:8, 23:5, 28:20
puts [1] - 31:23
putting [1] - 15:17

**Q**

quantities [1] - 8:9
questions [1] - 17:22
quickly [1] - 21:20
quite [1] - 23:8
quote [2] - 11:24, 22:11

**R**

raised [6] - 3:19, 7:9, 18:7, 22:2, 26:3, 42:25
range [1] - 38:6
rate [1] - 36:21
rather [1] - 19:21
reach [2] - 37:15, 41:11
reached [2] - 10:7,

16:12
reading [2] - 11:16, 44:20
realize [1] - 23:1
really [3] - 13:1, 21:3, 25:22
reason [4] - 10:17, 15:19, 37:1, 39:15
rebut [1] - 32:3
receive [2] - 19:14, 28:19
received [2] - 19:8, 27:16
recognition [2] - 24:24, 25:2
recognize [1] - 23:7
record [2] - 27:2, 39:21
recovery [1] - 42:14
refer [1] - 30:12
reference [4] - 11:7, 15:14, 21:18, 38:21
referenced [1] - 13:22
referring [2] - 11:13, 11:19
refers [1] - 27:13
reflects [1] - 40:2
refuting [1] - 8:20
regard [5] - 10:24, 38:8, 38:22, 41:15, 42:13
relate [2] - 29:15, 32:14
related [9] - 3:21, 4:6, 5:21, 31:3, 33:8, 35:7, 35:9, 37:3, 37:5
relating [3] - 19:23, 27:16, 27:19
relationships [1] - 36:25
relevant [12] - 4:3, 23:22, 27:6, 27:9, 27:20, 29:10, 29:18, 30:5, 33:11, 34:25, 35:5, 35:6
remember [1] - 11:16
remind [1] - 33:3
removed [2] - 36:5, 36:20
report [4] - 7:19, 17:5, 17:13, 40:7
reported [1] - 44:7
reporter [2] - 2:23, 2:24
Reporter [2] - 44:5, 44:6
REPORTER [1] - 2:25
reports [5] - 11:3, 14:15, 16:25, 17:2,

22:15
**representations** [1] - 32:8
**representative** [2] - 29:21, 38:5
**represented** [2] - 8:20, 25:11
**representing** [1] - 36:3
**request** [4] - 15:23, 25:20, 26:4, 39:6
**requested** [1] - 5:7
**requesting** [1] - 3:14
**requests** [5] - 5:21, 5:23, 12:15, 32:24, 34:15
**require** [2] - 20:13, 34:13
**requirements** [1] - 23:23
**resale** [4] - 30:25, 31:15, 37:2, 39:24
**resell** [1] - 36:17
**resolution** [1] - 16:19
**resolved** [1] - 25:6
**respect** [1] - 25:24
**respectfully** [3] - 13:8, 15:20, 17:21
**respective** [1] - 41:5
**respond** [7] - 8:22, 9:2, 14:18, 17:14, 18:13, 18:23, 32:18
**response** [10] - 8:16, 12:10, 17:6, 21:9, 24:12, 30:8, 30:9, 34:7, 40:13, 40:21
**responsibility** [1] - 3:7
**responsive** [5] - 11:6, 11:10, 11:13, 22:8, 24:6
**result** [3] - 5:12, 38:11, 39:5
**resurrect** [1] - 34:17
**revelation** [1] - 14:3
**Richard** [1] - 2:11
**RICHARD** [1] - 1:18
**RICHARDS** [1] - 1:21
**rights** [2] - 27:13, 29:16
**roughly** [1] - 34:2
**round** [1] - 16:14
**route** [1] - 39:8
**royalty** [3] - 29:7, 33:13, 40:3
**Rule** [1] - 23:23
**ruling** [3] - 16:7, 24:18, 39:2
**run** [1] - 25:13

**S**

**sales** [3] - 3:23, 8:5, 27:16
**sample** [1] - 38:5
**saw** [1] - 21:7
**schedule** [2] - 15:17, 17:17
**scheduling** [3] - 4:19, 13:9, 20:13
**scrambling** [1] - 15:8
**seal** [1] - 27:1
**SEALED** [1] - 44:16
**second** [19] - 4:2, 8:25, 9:15, 11:20, 12:14, 15:25, 16:2, 16:5, 16:9, 16:11, 16:14, 16:17, 16:21, 18:10, 19:12, 21:23, 24:16, 26:13, 27:7
**Section** [1] - 21:24
**section** [7] - 3:25, 6:2, 10:16, 11:23, 11:24, 12:5, 24:19
**see** [8] - 14:21, 17:10, 22:14, 24:3, 30:4, 38:22, 40:17
**seek** [2] - 22:13, 32:9
**seeking** [1] - 26:19
**seeks** [1] - 39:25
**seem** [1] - 3:11
**sell** [2] - 8:8, 31:13
**send** [1] - 3:4
**sense** [1] - 10:9
**separate** [2] - 20:19, 24:17, 42:4
**separately** [1] - 10:4
**September** [7] - 13:4, 14:7, 17:15, 30:21, 32:16, 34:1, 41:24
**sequitur** [1] - 15:1
**serve** [1] - 13:15
**served** [6] - 5:5, 5:20, 12:16, 12:22, 14:20, 22:15
**serves** [2] - 17:13, 28:7
**service** [1] - 22:16
**services** [1] - 31:13
**serving** [2] - 5:19, 15:5
**set** [4] - 4:21, 20:15, 21:11
**sets** [1] - 20:17
**several** [1] - 33:23
**short** [1] - 17:25
**Shorthand** [2] - 44:5, 44:6
**shorthand** [2] - 44:7,

44:12
**shortly** [1] - 5:18
**show** [1] - 10:24
**showed** [2] - 23:16, 40:6
**shown** [1] - 31:4
**side** [4] - 2:6, 8:20, 16:13, 17:24
**side's** [1] - 41:2
**SIGNED** [1] - 44:16
**Signify** [1] - 9:17
**similar** [2] - 3:12, 28:7
**simply** [5] - 6:19, 15:9, 19:4, 28:3, 30:22
**single** [1] - 6:9
**sit** [1] - 38:17
**six** [1] - 5:11
**small** [2] - 5:24, 32:22
**smallest** [1] - 38:17
**software** [22] - 27:12, 27:15, 27:17, 27:18, 27:19, 27:24, 27:25, 28:7, 28:10, 28:12, 28:14, 28:16, 28:17, 29:2, 29:3, 29:7, 29:10, 29:12, 29:19, 29:20, 33:12, 33:17
**sold** [4] - 28:17, 28:22, 35:1, 39:20
**solution** [1] - 40:17
**someone** [2] - 23:10, 28:4
**sometime** [1] - 42:17
**sorry** [5] - 11:9, 11:12, 11:18, 35:18, 37:4
**sort** [1] - 20:20
**sorts** [1] - 36:23
**sought** [7] - 8:11, 14:10, 16:3, 29:14, 30:14, 30:19, 31:16
**sounds** [1] - 38:19
**source** [2] - 13:12, 13:20
**specifically** [2] - 6:16, 8:1
**Speedbudget** [1] - 44:22
**spelled** [1] - 4:17
**split** [1] - 25:10
**ss** [1] - 44:2
**stage** [1] - 25:18
**stages** [1] - 19:19
**stand** [4] - 16:22, 24:13, 34:19, 40:9
**standard** [7] - 10:8, 11:1, 13:14, 14:16, 14:17, 20:19, 20:24
**standards** [1] - 10:20
**stark** [1] - 9:25
**start** [6] - 3:12, 8:23,

13:3, 26:15, 32:15, 38:18
**starting** [1] - 33:12
**STATE** [1] - 44:2
**state** [1] - 7:24
**statements** [1] - 21:16
**STATES** [1] - 1:1
**status** [1] - 16:4
**statute** [4] - 4:1, 17:12, 23:4, 24:21
**statutes** [1] - 23:8
**stay** [1] - 16:9
**stayed** [1] - 19:13
**Stenotype** [1] - 44:7
**step** [3] - 12:9, 36:5, 36:20
**still** [2] - 6:22, 27:20
**strike** [3] - 22:20, 26:6, 40:14
**subject** [5] - 6:6, 15:8, 16:1, 31:4, 32:25
**submission** [1] - 25:21
**submissions** [1] - 43:1
**submit** [1] - 12:1
**submitted** [1] - 41:22
**subparts** [1] - 24:23
**subsection** [1] - 6:21
**substance** [2] - 22:21, 37:8
**substantial** [1] - 38:20
**substantially** [1] - 15:4
**suffice** [2] - 9:7, 23:5
**sufficient** [5] - 6:18, 19:3, 19:6, 19:17, 38:10
**suggest** [1] - 38:16
**suggestion** [1] - 24:4
**suit** [1] - 3:23
**summary** [1] - 8:10
**supplier** [1] - 39:19
**supporting** [1] - 40:3
**supposed** [3] - 15:3, 16:24, 22:17
**surgical** [1] - 9:13

**T**

**tail** [1] - 42:3
**Taylor** [1] - 3:5
**teams** [1] - 41:5
**technical** [4] - 13:12, 13:19, 28:13, 42:5
**techniques** [2] - 28:23, 28:25
**technologically** [1] - 28:15

**TECHNOLOGIES** [2] - 1:3, 44:9
**technologies** [3] - 35:4, 35:12, 35:25
**technology** [17] - 20:12, 27:22, 33:18, 35:7, 35:8, 35:9, 35:10, 36:6, 36:8, 36:9, 36:12, 36:14, 36:18, 36:20, 36:22, 37:7
**teleconference** [1] - 1:13
**ten** [4] - 26:20, 26:21, 37:24, 38:6
**tenor** [1] - 39:23
**terms** [1] - 22:4
**THE** [46] - 1:1, 1:12, 2:1, 2:14, 2:22, 2:25, 3:2, 4:8, 4:11, 5:1, 5:13, 5:17, 6:2, 8:12, 8:15, 8:18, 9:20, 9:22, 11:8, 11:11, 11:16, 12:11, 15:22, 16:4, 16:23, 17:18, 17:24, 18:9, 18:15, 21:15, 24:15, 30:7, 32:17, 34:6, 34:21, 35:6, 35:15, 35:20, 37:10, 38:7, 39:2, 40:19, 41:14, 41:25, 42:23, 43:5
**themselves** [4] - 2:24, 29:18, 32:11, 36:4
**theories** [2] - 7:2, 11:2
**theory** [7] - 4:18, 14:13, 15:5, 15:9, 15:16, 17:11, 22:15
**therefore** [1] - 38:11
**thesis** [1] - 6:19
**they've** [4] - 14:12, 22:6, 31:4
**thinks** [2] - 30:5, 33:10
**third** [3] - 20:21, 28:9, 28:10
**three** [6] - 6:13, 7:21, 7:25, 11:14, 24:1, 24:6
**Thynge** [1] - 1:12, 2:2
**tied** [1] - 42:16
**timeliness** [1] - 20:8
**timely** [1] - 20:4
**timing** [3] - 21:10, 30:23, 31:6
**today** [5] - 2:9, 2:13, 3:8, 21:12, 41:18
**topics** [2] - 32:2, 42:12
**towards** [1] - 39:7

| | | |
|---|---|---|
| **TRANSCRIPT** [1] - 1:9 | **up** [7] - 18:1, 23:16, 23:25, 31:4, 37:23, 40:6, 41:14 | **witnesses** [3] - 32:1, 32:2, 40:8 |
| **transcript** [4] - 3:3, 3:7, 44:11, 44:13 | | **writes** [1] - 11:22 |
| **trial** [4] - 5:10, 41:19, 41:20 | | |

**V**

**vacuum** [1] - 38:25
**vague** [1] - 22:10
**vaguely** [1] - 22:13
**valuation** [3] - 37:16, 38:23, 39:10
**value** [4] - 28:21, 29:10, 29:11, 33:11
**values** [1] - 37:12
**variety** [1] - 28:23
**various** [1] - 42:12
**versus** [3] - 9:13, 9:17, 37:9
**via** [2] - 1:12, 31:14
**ViaTech** [22] - 2:6, 2:9, 3:19, 3:24, 4:3, 10:22, 13:21, 14:19, 14:21, 15:19, 15:23, 16:18, 22:12, 23:20, 24:2, 24:9, 31:19, 32:5, 32:8, 32:14, 39:25, 43:4
**VIATECH** [1] - 1:3, 44:9
**ViaTech's** [7] - 3:13, 3:21, 11:25, 12:15, 19:9, 25:25, 34:15
**voice** [2] - 2:5, 2:15
**vs** [2] - 1:5, 44:10

**Y**

**year** [5] - 10:23, 13:4, 13:10, 13:24, 41:9
**year-plus** [1] - 41:9
**yourselves** [1] - 39:11

**Z**

**ZACHARY** [22] - 1:18, 3:16, 4:9, 4:13, 5:3, 5:14, 5:18, 6:4, 8:13, 18:6, 18:12, 18:18, 26:17, 27:4, 32:19, 35:3, 35:13, 38:1, 39:1, 40:24, 42:20, 43:4
**Zachary** [19] - 2:11, 2:12, 3:15, 8:21, 10:19, 18:3, 18:17, 21:19, 25:11, 26:15, 26:18, 26:23, 30:11, 30:18, 32:18, 34:8, 34:10, 37:23, 40:21
**Zachary's** [3] - 8:24, 9:11, 24:12

**TriDi** [2] - 9:16, 10:1
**TRIDI** [1] - 9:17
**tried** [4] - 20:23, 21:3, 21:10, 24:9
**true** [1] - 44:14
**try** [1] - 42:18
**trying** [6] - 28:5, 34:21, 35:21, 38:12, 38:24, 40:18
**two** [21] - 3:19, 4:21, 4:24, 4:25, 5:15, 9:5, 10:20, 11:7, 11:15, 12:16, 17:9, 17:25, 18:21, 19:14, 20:2, 20:17, 22:8, 23:8, 28:14, 35:4, 35:11
**two-month** [2] - 4:24, 4:25
**Twombly** [4] - 10:7, 10:20, 10:21, 11:1
**type** [1] - 42:7
**typed** [1] - 44:12
**types** [1] - 28:14
**typewritten** [1] - 44:14

**U**

**U.S** [5] - 6:15, 10:10, 23:4, 23:10, 23:13
**U.S.M.J** [1] - 1:12
**unaccused** [3] - 31:3, 34:16, 36:9
**unauthorized** [2] - 28:3, 29:13
**unaware** [1] - 23:2
**under** [26] - 3:25, 4:18, 5:22, 8:9, 9:6, 9:8, 10:4, 10:6, 11:24, 13:2, 13:14, 14:1, 15:13, 17:12, 17:17, 19:4, 20:23, 21:24, 22:23, 23:4, 23:5, 23:7, 23:23, 25:14, 27:1
**understood** [4] - 17:25, 34:15, 36:7, 41:17
**unduly** [1] - 25:21
**UNITED** [1] - 1:1
**unless** [2] - 17:21, 32:8
**unlike** [1] - 9:3
**unplead** [1] - 22:13
**unrelated** [1] - 15:15

**W**

**wags** [1] - 42:3
**wait** [2] - 5:1, 11:8
**waited** [1] - 15:20
**waiting** [3] - 10:22, 16:7, 16:15
**wants** [3] - 28:10, 32:4, 34:18
**warner** [1] - 44:4
**Warner** [2] - 3:1, 44:21
**week** [2] - 5:19, 12:23
**weeks** [1] - 14:23
**Westlaw** [2] - 9:15, 9:19
**wherein** [1] - 37:14
**whole** [1] - 39:8
**wins** [1] - 12:7
**withdrawn** [3] - 30:20, 34:16, 34:23
**withdrew** [1] - 32:16
**witness** [2] - 14:4, 33:21