**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| VIATECH TECHNOLOGIES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 20-358-RGA-JLH |
| v. | ) | |
| | ) | |
| ADOBE INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**[PROPOSED] FINAL JURY INSTRUCTIONS**

TABLE OF CONTENTS

**Page**

1. GENERAL INSTRUCTIONS ............................................................................ 2

    1.a. CONTESTED:  BURDENS OF PROOF ................................................ 3

    1.b. EVIDENCE – INCONSISTENT STATEMENTS OR CONDUCT BY WITNESSES ............................................................................................ 4

    1.c. EVIDENCE – DEPOSITION TESTIMONY ....................................... 5

    1.d. EVIDENCE – EXHIBITS ................................................................... 6

    1.e. EVIDENCE – STIPULATIONS .......................................................... 7

    1.f. JUROR NOTES ................................................................................... 8

2. PATENT ISSUES PRESENTED ................................................................... 9

3. PATENT INFRINGEMENT GENERALLY ................................................. 11

    3.a. CONTESTED: DIRECT INFRINGEMENT ...................................... 12

    3.b. CONTESTED:  DIRECT INFRINGEMENT– MEANS-PLUS-FUNCTION CLAIMS .......................................................................... 13

    3.c. INDUCED INFRINGEMENT .......................................................... 14

    3.d. WILLFUL INFRINGEMENT .......................................................... 15

4. INVALIDITY – GENERALLY ................................................................... 16

    4.a. INVALIDITY – PRIOR ART ........................................................... 17

    4.a. CONTESTED: INVALIDITY – PERSON OF ORDINARY SKILL IN THE ART ........................................................................................... 18

    4.b. CONTESTED:  INVALIDITY – ANTICIPATION ............................ 19

    4.d. INVALIDITY – OBVIOUSNESS ..................................................... 20

    4.d. CONTESTED: INVALIDITY – SECONDARY CONSIDERATIONS OF NONOBVIOUSNESS ................................................................... 22

5. DAMAGES – GENERALLY ....................................................................... 23

    5.a. DAMAGES – DATE DAMAGES BEGIN ....................................... 24

    5.b.    DAMAGES – REASONABLE ROYALTY – ENTITLEMENT ......................... 25

    5.c.    DAMAGES – REASONABLE ROYALTY – DEFINITION ............................. 25

    5.d.    CONTESTED:  DAMAGES – REASONABLE ROYALTY –
               RELEVANT FACTORS .................................................................................. 26

    5.e.    DAMAGES – APPORTIONMENT ..................................................................... 28

6.    DELIBERATION – INTRODUCTION ................................................................. 29

    6.a.    DELIBERATION – UNANIMOUS VERDICT ..................................................... 30

    6.b.    DELIBERATION – DUTY TO DELIBERATE ..................................................... 31

    6.c.    DELIBERATIONS – SOCIAL MEDIA ............................................................... 32

    6.d.    COURT HAS NO OPINION ............................................................................... 33

Plaintiff ViaTech Technologies, Inc. ("ViaTech" or "Plaintiff") and Defendant Adobe Inc. ("Adobe" or "Defendant") submit the following [Proposed] Final Jury Instructions for the trial in this matter.

Where the Parties dispute the language of an instruction, different color highlighting is used. Specifically, text highlighted in ==yellow== is text that ViaTech proposes adding to the instructions to which Adobe does not agree. Text highlighted in ==blue== is text that Adobe proposes adding to the instructions to which ViaTech does not agree. The parties' arguments and citations in support of their proposals, included in the footnotes, are also highlighted in yellow or blue respectively.

The Parties reserve all rights to supplement, amend, or otherwise modify these proposed instructions as appropriate, including but not limited to the right to revise their positions on the proposed instructions in response to future rulings by the Court or the evidence as it is admitted at trial.

## 1. GENERAL INSTRUCTIONS[1]

Ladies and gentlemen of the jury, we have now come to the point in the case when it is my duty to instruct you on the rules of law that you must follow and apply in deciding this case.

All of the instructions are equally important.  The order in which these instructions are given has no significance. You are not to single out any particular part of the instructions and ignore the rest, but you are to consider all the instructions as a whole and regard each in the light of all the others.

You will have your written copy of these instructions, as well as the preliminary instructions, with you in the jury room for your reference during your deliberations.  You will also have a verdict form, which will list the questions that you must answer to decide this case.

---

[1] ViaTech notes that this is a standard instruction given by courts in this District as part of the Final Jury Instructions.  By the time the jury hears the Final Jury Instructions, more than one week will have passed since the jury members heard the Preliminary Jury Instructions.  Adobe proposes to omit this instruction in its entirety for length, and as redundant with the preliminary instructions, which the jury already has in paper copy.

**1.a.      CONTESTED:  BURDENS OF PROOF[2]**

For each issue in this case, either Plaintiff ViaTech or Defendant Adobe bears the burden of proof.  The side who bears the burden of proof on an issue bears their burden to persuade you to find in their favor.  As I said in the preliminary instructions, in this case there are two different burdens of proof.  The first is called "preponderance of the evidence."  The second is called "clear and convincing evidence."

ViaTech has the burden of proving that Adobe infringed the asserted claims of the '567 Patent and the amount of damages that ViaTech should receive to compensate it for any infringement by a preponderance of the evidence.  To prove its claim of willfulness, ViaTech must prove by a preponderance of the evidence that Adobe's infringement was willful.  That means ViaTech has to produce evidence which, when considered in light of all of the facts, leads you to believe that what ViaTech claims is more likely true than not.  To put it differently, if you were to put ViaTech's and Adobe's evidence on the opposite sides of a scale, the evidence supporting ViaTech's claims would have to make the scales tip somewhat on ViaTech's side.

The other burden of proof is "clear and convincing evidence."  Adobe has the burden of proving that the asserted claims of the '567 Patent are invalid by clear and convincing evidence.  Clear and convincing evidence is evidence that produces an abiding conviction that the truth of a factual contention is highly probable.  Proof by clear and convincing evidence is a higher burden than proof by a preponderance of the evidence.

---

[2] ViaTech notes that this is a standard instruction given by courts in this District as part of the Final Jury Instructions.  By the time the jury hears the Final Jury Instructions, more than one week will have passed since the jury members heard the Preliminary Jury Instructions.  Adobe proposes to omit this instruction in its entirety for length, and as redundant with the preliminary instructions, which the jury already has in paper copy.

**1.b.      CONTESTED: EVIDENCE – INCONSISTENT STATEMENTS OR CONDUCT BY WITNESSES[3]**

A witness may be discredited or impeached by contradictory evidence or by evidence that at some other time the witness has said or done something, or has failed to say or do something, that is inconsistent with the witness's present testimony.

If you believe that any witness has been impeached and thus discredited, you may give the testimony of that witness such credibility, if any, you think it deserves.

If a witness is shown knowingly to have testified falsely about any material matter, you have a right to distrust such witness's other testimony and you may reject all the testimony of that witness or give it such credibility as you may think it deserves; you may, of course, accept any part you decide is true.  This is all for you, the jury, to decide.

---

[3] ViaTech notes that this is a standard instruction given by courts in this District as part of the Final Jury Instructions. By the time the jury hears the Final Jury Instructions, more than one week will have passed since the jury members heard the Preliminary Jury Instructions.  Adobe proposes to omit this instruction in its entirety for length, and as redundant with the expected preliminary instructions, which the jury already has in paper copy.

**1.c.      CONTESTED: EVIDENCE – DEPOSITION TESTIMONY[4]**

During the trial, certain testimony was presented to you through depositions that were read into evidence or electronically played.  This testimony must be given the same consideration you would give it had the witness personally appeared in court.  Like the testimony of a live witness, the statements made in a deposition are made under oath and are considered evidence that may be used to prove particular facts.  The deposition testimony may have been edited or cut to exclude irrelevant testimony as the parties have only a limited amount of time to present you with the evidence.  You should not attribute any significance to the fact that the deposition videos may appear to have been edited.

---

[4] ViaTech notes that this is a standard instruction given by courts in this District as part of the Final Jury Instructions.  By the time the jury hears the Final Jury Instructions, more than one week will have passed since the jury members heard the Preliminary Jury Instructions.  Adobe proposes to omit this instruction in its entirety for length, and as redundant with the expected preliminary instructions, which the jury already has in paper copy.

**1.d.     CONTESTED: EVIDENCE – EXHIBITS[5]**

During the trial, you have seen many exhibits, and many were admitted as evidence.  You will have these admitted exhibits in the jury room during your deliberations.  Other exhibits (such as charts and animations presented by attorneys and witnesses) were offered to help illustrate the testimony of the various witnesses.  These illustrations, called "demonstrative exhibits," have not been admitted as evidence, are not evidence, and should not be considered as evidence.  Rather the underlying testimony of the witness that you heard when you saw the demonstrative exhibits is the evidence.

---

[5] ViaTech notes that this is a standard instruction given by courts in this District as part of the Final Jury Instructions. By the time the jury hears the Final Jury Instructions, more than one week will have passed since the jury members heard the Preliminary Jury Instructions.  Adobe proposes to omit this instruction in its entirety for length, and as redundant with the expected preliminary instructions, which the jury already has in paper copy.

**1.e.      CONTESTED: EVIDENCE – STIPULATIONS[6]**

The parties have stipulated, that is, formally agreed, that certain facts are true, and some of those stipulations have been read to you during trial.  You must treat those facts as having been proven for the purposes of this case.

---

[6] ViaTech notes that this is a standard instruction given by courts in this District as part of the Final Jury Instructions.  By the time the jury hears the Final Jury Instructions, more than one week will have passed since the jury members heard the Preliminary Jury Instructions.  Adobe proposes to omit this instruction in its entirety for length, and as redundant with the expected preliminary instructions, which the jury already has in paper copy.

**1.f.      CONTESTED: JUROR NOTES[7]**

If you took notes, please remember that your notes are not evidence.  You should keep your notes to yourself.  They may only be used to help refresh your personal recollection of the evidence in this case.  It is the evidence itself, and not your notes, that you should discuss with the other jurors.

If you cannot recall a particular piece of evidence, you should not be overly influenced by the fact that someone else on the jury appears to have a note regarding that evidence.

Remember, it is your recollection and the collective recollection of all of you upon which you should rely in deciding the facts in the case.

---

[7] ViaTech notes that this is a standard instruction given by courts in this District as part of the Final Jury Instructions.  By the time the jury hears the Final Jury Instructions, more than one week will have passed since the jury members heard the Preliminary Jury Instructions.  Adobe proposes to omit this instruction in its entirety for length, and as redundant with the expected preliminary instructions, which the jury already has in paper copy.

2.      **PATENT ISSUES PRESENTED**

I will now summarize the issues that you must decide and for which I will provide instructions to guide your deliberations.  You must decide the following issues:

1. Whether ViaTech has proven by a preponderance of the evidence that Adobe has infringed claims 1, 5, 7, 13 and/or 14 of the '567 Patent.
2. Whether ViaTech has proven by a preponderance of the evidence that Adobe's infringement of any of the claims was willful.
3. Whether Adobe has proven by clear and convincing evidence that any claim is invalid.
4. If you decide that any asserted claim has been infringed and is not invalid, the amount of money damages that is adequate to compensate ViaTech for infringement.

**2.a.**     **THE CLAIMS OF A PATENT**

Before you can decide many of the issues in this case, you will need to understand the role of patent "claims."  The patent claims are the numbered sentences at the end of a patent. The claims are important because the words of a claim define the scope of the patent right. The figures and text in the rest of the patent provide a description and/or examples of the invention and provide a context for the claims, but the claims alone define the extent of the patent's coverage.

It is my job as a judge to define the terms of the claims and to instruct you about their meaning. In this case, I have determined the meaning of ten terms, which are provided in your juror notebook. Your juror notebook indicates which terms correspond to which claims. It is your role to apply my definitions to the issues that you are asked to decide. For any words in the claim for which I have not provided you with a definition, you should apply their ordinary meaning. You must use the same claim meaning for both your decision on infringement and your decision on invalidity.

Here, you will need to understand what each of the asserted claims covers in order to decide whether or not that claim is infringed, as well as whether or not that claim is invalid. To know what a claim covers, a claim sets forth, in words, a set of requirements. Each claim sets forth its requirements in a single sentence. The requirements of a claim are often referred to as "claim elements" or "claim limitations." The coverage of a patent is assessed claim-by-claim.

An "independent claim" sets forth all of the requirements that must be met in order to be covered by that claim. Thus, it is not necessary to look at any other claim to determine what an independent claim covers.

A "dependent claim" does not recite all of the requirements of the claim but refers to another claim for some of its requirements. In this way, the claim "depends" on another claim. A dependent claim incorporates all of the requirements of the claims to which it refers. The dependent claim then adds its own additional requirements. To determine what a dependent claim covers, it is necessary to look at both the dependent claim and any other claim to which it refers. A product that meets all the requirements of both the dependent claim and the claims to which it refers is covered by the dependent claim.

In this case, claim 1 is an independent claim.  Claims 5, 7 and 13-14 are dependent claims.  For example, claim 5 depends on claim 1.  So, to determine what claim 5 covers, the words of claim 1 and claim 5 must be read together.

### 3.   PATENT INFRINGEMENT GENERALLY

I will now instruct you how to decide whether or not ViaTech has proven that Adobe has infringed the asserted patent.

The United States' patent law gives the owner of a valid patent the right to exclude others from making, using, or selling the patented invention within the United States during the term of the patent.  Any person or company that has engaged in any of those acts without the patent owner's permission, infringes the patent.

In this case, there are two possible ways that the asserted claims may be infringed: (1) direct infringement; and (2) indirect infringement.

Adobe is liable for infringement if you find that ViaTech has proven the requirements for direct and/or indirect infringement by a preponderance of the evidence, that is, that it is more likely than not that the requirements are met.

Infringement is determined on a claim-by-claim basis.  Therefore, you may find that one claim of the patent is infringed even if other claims are not infringed.

You have heard evidence about both Adobe's Accused Products and ViaTech's product. In deciding the issue of infringement, you may not compare Adobe's Accused Products to ViaTech's product.  You must only compare Adobe's Accused Products to the asserted claims.

[You have heard certain arguments and evidence that Adobe owns its own patents. Ownership of separate patents is not a defense to patent infringement.  Adobe can still infringe the asserted patent, even if it has its own patents in the same area.][8]

I will now explain direct infringement in more detail.

---

[8] ViaTech notes that this language is from Delaware final jury instructions.  *See* Final Jury Instruction No. 4.6, *Natera, Inc. v. ArcherDx, Inc. et al*, C.A. No. 1:20-cv-001250-GBW (D. Del. May 12, 2023), ECF No. 605 at 57063. ViaTech further maintains that this instruction is appropriate because it expects Adobe to present evidence that it owns patents in the same field of technology as the Patent-in-Suit.  Adobe is not prohibited from presenting such evidence by any motion *in limine* ruling.  To the extent that Adobe agrees not to present any evidence regarding its own patents in the same field of technology as the Patent-in-Suit, ViaTech will withdraw its proposed language. Adobe objects to this language because this instruction does not appear in the model patent jury instructions.

### 3.a.      CONTESTED: DIRECT INFRINGEMENT

In this case, ViaTech asserts that Adobe has directly infringed the asserted patent.  Adobe is liable for directly infringing the asserted patent if you find that ViaTech has proven that it is more likely than not that Adobe made, used, or sold the invention defined in at least one claim of the asserted patent.

A party can directly infringe a patent without knowing of the patent or without knowing that what the party is doing is patent infringement.  [A party can directly infringe the asserted claims if it made, used, or sold within the United States software that includes the patented features, that is, the software is capable of meeting the elements of the asserted claims.][9]

To determine literal infringement, you must compare the accused product with each patent claim ViaTech asserts is infringed. A patent claim is literally infringed only if Adobe's product includes each and every element recited in that patent claim. You must determine literal infringement with respect to each patent claim individually.

---

[9] *Fantasy Sports Properties, Inc. v. Sportsline.com, Inc.*, 287 F.3d 1108, 1118 (Fed. Cir. 2002); *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1205 (Fed. Cir. 2010). ViaTech disagrees with Adobe's position below.  The preamble of Claim 1, for example, is limiting (D.I. 86) (claim construction order), and claims a digital content file "for controlling the licensed use of digital content."  Consequently, the claim elements that comprise the digital content file are all "for controlling" the licensed use of digital communication.  Adobe submits that this instruction is improper and will confuse the jury. The asserted claims do not require software elements "capable of" performing certain functions as in *Finjan,* but instead requires software elements actively "communicating," "monitoring," and "providing communications" as claimed. *See Radware, Ltd. v. F5 Networks, Inc.*, No. 5:13-CV-02024-RMW, 2016 WL 393227, at *5 (N.D. Cal. Feb. 2, 2016) (distinguishing *Finjan* and finding no infringement where asserted claim explicitly required software "operable to" perform claimed activities); *see also Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1217 (Fed. Cir. 2014) (discussing different application of *Finjan* to claim language "reciting capability" versus claim language requiring "actual operation").

### 3.b.   CONTESTED:  DIRECT INFRINGEMENT– MEANS-PLUS-FUNCTION CLAIMS

Claims 1 and 5 include requirements that are in "means-plus-function" form. In your juror notebooks you will find these elements and the '567 Patent structures I have defined as performing the claimed functions.

A product meets a means-plus-function requirement if it includes a structure that performs the identical function recited in the claim and is either identical or "equivalent" to the described structure(s) that I defined. If the product does not perform the specific function recited in the claim, or if the product has a structure that performs the function recited in the claim but the structure is neither identical nor "equivalent" to those I defined, the product does not literally infringe the asserted claim. [The fact that a set of structures is known to be "equivalent" today is not enough. The set of structures must also have been available at the time the '567 Patent issued.][10]

---

[10] Plaintiff objects that this instruction is improper because this is not at issue in this case.

**3.c.     CONTESTED: INDUCED INFRINGEMENT**

ViaTech also alleges that Adobe is liable for actively inducing its customers, distributors, and end users to directly infringe the asserted patent.  As with direct infringement, you must determine whether there has been active inducement on a claim-by-claim basis. Induced infringement requires knowledge both that the patent exists and that the accused infringer is encouraging the infringement of the patent.

Adobe is liable for active inducement of the Patent-in-Suit if ViaTech proves by a preponderance of the evidence:

1. that the acts carried out by Adobe's customers, distributors, and/or end users directly infringe the patent;
2. that Adobe took action that was intended to cause and led the customers, distributors, and/or end users to perform the infringing acts;
3. that Adobe was aware of the Patent-in-Suit and knew that the acts, if taken, would constitute infringement of the patent.

**3.d.      WILLFUL INFRINGEMENT**

If you find that it is more likely true than not that Adobe infringed a claim of the asserted patent, then you must also determine whether or not Adobe's infringement was willful. To show that Adobe's infringement was willful, ViaTech must prove by a preponderance of the evidence that Adobe knew of the asserted patent and deliberately or intentionally infringed the patent. For example, you may consider whether Adobe acted despite a risk of infringement that was either known or so obvious that it should have been known. Knowledge of the asserted patent is a prerequisite to willfulness.

You may not, however, determine that infringement was willful just because Adobe knew of ViaTech's patent, without more. Willfulness is assessed at the time the challenged conduct occurred. In determining whether ViaTech has proved that Adobe's infringement was willful, you must consider all of the circumstances and assess Adobe's knowledge at the time the challenged conduct occurred.

**4.  INVALIDITY – GENERALLY**

Adobe has the burden of proving by clear and convincing evidence that the asserted claims are invalid.

Adobe contends that the asserted claims of the asserted patent are invalid for two reasons. First, Adobe contends that the claims are "anticipated" by the prior art.  Second, Adobe contends that the claims are "obvious" over the prior art.

I will now instruct you on the rules you must follow in deciding whether or not Adobe has proven that any asserted claim of the asserted patent is invalid.

**4.a.      INVALIDITY – PRIOR ART**

Under the patent laws, a person is entitled to a patent only if the invention claimed in the patent is new and nonobvious in light of what came before. That which came before is referred to as "prior art."

**4.a.      CONTESTED: INVALIDITY – PERSON OF ORDINARY SKILL IN THE ART[11]**

The question of invalidity of a patent claim is determined from the perspective of a person of ordinary skill in the art in the field of the invention at the time of the invention.

You must determine the level of ordinary skill in the field of the invention.  In deciding what the level of ordinary skill is, you should consider all the evidence introduced at trial, including but not limited to (1) the levels of education and experience of the inventors and other persons actively working in the field; (2) the types of problems encountered in the field; (3) prior art solutions to those problems; (4) rapidity with which innovations are made; and (5) the sophistication of the technology.

**AUTHORITY:**      Final Jury Instruction No. II.H., *RSB Spine LLC v. Depuy Synthes Sales, Inc., et al*, C.A. No. 19-cv-1515-RGA (D. Del. Dec. 9, 2022), ECF No. 275 at 31622; Final Jury Instruction No. 4.2, *First Quality Tissue, LLC v. Irving Consumer Products Limited, et al*, C.A. No. 19-428-RGA (D. Del. Apr. 29, 2022), ECF No. 380 at 14197.

---

[11] Adobe proposes to delete this instruction unless evidence is presented on the issue.

**4.b.      INVALIDITY – ANTICIPATION**

[Adobe contends that some of the asserted claims of the asserted patent are invalid because the claimed inventions of claims 1 and 13 are anticipated by FileOpen System versions 2.0, 2.1, 2.11, and 2.12 and claims 1, 7 and 13 are anticipated by Coley.][12]  Adobe must convince you of this by clear and convincing evidence.

Anticipation must be determined on a claim-by-claim basis.

To anticipate a claim, each element in the claim must be present in a single item of prior art. You may not combine two or more items of prior art to find anticipation. In determining whether every one of the elements of the claimed invention is found in the prior art you should consider what a person of ordinary skill in the art would have understood from his or her review of the prior art.   To anticipate the invention, the prior art does not have to use the same words as the claim, but all of the requirements of the claim must have been disclosed and arranged as in the claim. The claim requirements must be disclosed such that a person having ordinary skill in the art in the technology of the invention, looking at that one reference, could make and use the claimed invention.[13]

---

[12] Plaintiff proposes that this language be finalized after testimony is complete, and to be consistent with the representations made by Adobe's counsel regarding narrowed invalidity contentions.

**4.d.   CONTESTED: INVALIDITY – OBVIOUSNESS**

Even though an invention may not have been identically disclosed or described before it was made by an inventor, in order to be patentable, the invention must also not have been obvious to a person of ordinary skill in the field of technology of the patent at the time the invention was made.

Adobe contends that the asserted claims of the asserted patent are obvious in view of the following references and combinations of references:

- [The FileOpen System Versions 2.0, 2.1, 2.11, and 2.12, alone or in view of U.S. Patent No. 6,243,468 to Pearce or U.S. Patent No. 6,041,411 to Wyatt.

- U.S. Patent No. 5,790,664 to Coley alone or in view of Pearce or Wyatt

- Wyatt in view of Coley or Pearce.][14]

- [Claim 1 is rendered obvious by Coley or Coley in view of Wyatt

- Claim 5 is rendered obvious by the combination of the FileOpen System and Pearce or the combination of Coley and Wyatt and/or Pearce

- Claim 7 is rendered obvious by Coley or Coley in view of Wyatt or the FileOpen System in view of Wyatt

- Claim 13 is rendered obvious by Coley or Coley in view of Wyatt

- Claim 14 is rendered obvious by Coley in view of Wyatt or the FileOpen System in view of Wyatt][15]

Adobe may establish that a patent claim is invalid by showing, by clear and convincing evidence, that the claimed invention would have been obvious to persons having ordinary skill in the art at the time the invention was made in the field of the technology of the patent. In order for a claim to be invalid for obviousness, each and every element of an Asserted Claim must be present in the asserted combination of alleged prior art references or the evidence must show a reason for a person of ordinary skill in the art to modify the prior art teachings to obtain the claimed invention. In analyzing the relevance of the differences between the claimed invention and the prior art, you may consider the inferences and creative steps that a person of ordinary skill in the art would have employed in reviewing the prior art at the time of the invention.

---

[14] Plaintiff proposes that this language be finalized after testimony is complete, and to be consistent with the representations made by Adobe's counsel regarding narrowed invalidity contentions.

[15] Plaintiff's proposed version reflects the theories set forth in Adobe's expert's report as subsequently narrowed by Adobe for trial.

In determining whether a claimed invention is obvious, you must consider the level of ordinary skill in the field of the invention that someone would have had at the time the invention was made, the scope and content of the prior art, any differences between the prior art and the claimed invention, and, if present, so-called objective evidence or secondary considerations, which I will describe shortly. Do not use hindsight; consider only what was known at the time of the invention.

[Keep in mind that the existence of each and every element of the claimed invention in the prior art does not necessarily prove obviousness. Most, if not all, inventions rely on building blocks of prior art.][16]

In considering whether a claimed invention is obvious, you may but are not required to find obviousness if you find that at the time of the claimed invention there was a reason that would have prompted a person having ordinary skill in the field of technology of the patent to combine the known elements in a way the claimed invention does, taking into account such factors as (1) whether the claimed invention was merely the predictable result of using prior art elements according to their known function(s); (2) whether the claimed invention provides an obvious solution to a known problem in the relevant field; (3) whether the prior art teaches or suggests the desirability of combining elements claimed in the invention; (4) whether the prior art teaches away from combining elements in the claimed invention; (5) whether it would have been obvious to try the combinations of elements, such as when there is a design need or market pressure to solve a problem and there are a finite number of identified, predictable solutions; and (6) whether the change resulted more from design incentives or other market forces.

To find that prior art rendered the invention obvious, you must find that it provided a reasonable expectation of success. Obvious to try is not sufficient in unpredictable technologies.

In determining whether the claimed invention was obvious, consider each claim separately.

---

[16] Final Jury Instruction No. 5.4, *Shopify Inc. v. Express Mobile, Inc.*, C.A. No. 1:19-cv-00439-RGA (D. Del. Aug. 30, 2022), ECF No. 417 at 44592. Adobe objects to this instruction as likely to confuse the jury ("the existence of each and every element of the claimed invention in the prior art does not necessarily prove obviousness").

**4.d.    CONTESTED: INVALIDITY – SECONDARY CONSIDERATIONS OF NONOBVIOUSNESS**

[In making your assessment of whether a claimed invention was obvious or not, you must take into account any objective evidence that may shed light on the obviousness or not of the claimed invention. In patent law, we typically refer to this type of evidence as "secondary considerations" of non-obviousness.

For example, the following facts, individually or collectively, may shed light on whether or not the claimed invention is obvious:

1.   Whether the claimed invention was commercially successful as a result of the merits of the claimed invention (rather than the result of design needs or market pressure advertising or similar activities);
2.   Whether others had tried and failed to make the claimed invention;
3.   Whether persons having ordinary skill in the art of the claimed invention expressed surprise or disbelief regarding whether the claimed invention would work;
4.   Whether others in the field praised the claimed invention; and
5.   Whether the claimed invention satisfied a long-felt need.

In determining whether the claimed invention was obvious, consider each claim separately, but understand that if a dependent claim is obvious, then the claims from which it depends are necessarily obvious as well.][17]

---

[17] ViaTech's expert has not yet testified on invalidity, and secondary considerations may be based either on fact witness or expert testimony.  Final Jury Instruction No. 5.5, *Shopify Inc. v. Express Mobile, Inc.*, C.A. No. 1:19-cv-00439-RGA (D. Del. Aug. 30, 2022), ECF No. 417 at 44594; Final Jury Instruction No. 6.C., *Personal Audio, LLC v. Google LLC*, C.A. No. 1:17-cv-01751-CFC (D. Del. Sep. 12, 2023), ECF No. 886 at 46692. Adobe objects to the inclusion of this instruction as ViaTech's expert has not presented evidence on these issues, and as ViaTech has already stated it will not rely on commercial success.

## 5.  DAMAGES – GENERALLY

If you find that Adobe infringed any asserted claim of the asserted patent, and that those claims are not invalid, you must then consider what amount of damages to award to ViaTech.  I will now instruct you about the measure of damages.  By instructing you on damages, I am not suggesting which party should win this case, on any issue. If you find that Adobe has not infringed any valid claim of the patent, then ViaTech is not entitled to any damages.

The damages you award must be adequate to compensate ViaTech for the infringement, but may not be less than a reasonable royalty for the use of ViaTech's invention.  ViaTech has the burden to establish the amount of its damages by a preponderance of the evidence.  While ViaTech is not required to prove the amount of its damages with mathematical precision, it must prove them with reasonable certainty. You may not award damages that are speculative, damages that are only possible, or damages that are based on guesswork.

**5.a.    DAMAGES – DATE DAMAGES BEGIN**

ViaTech and Adobe agree that the date for the start of any damages calculation is April 10, 2015.

**5.b.      DAMAGES – REASONABLE ROYALTY – ENTITLEMENT**

A reasonable royalty is defined as the money amount ViaTech and Adobe would have agreed upon as a fee for use of the invention at the time just prior to when infringement began. If you find that ViaTech has proven infringement of any valid asserted claim, ViaTech is entitled to at least a reasonable royalty to compensate it for that infringement.

**5.c.      DAMAGES – REASONABLE ROYALTY – DEFINITION**

A royalty is a payment made to a patent holder in exchange for the right to make, use, or sell the claimed invention.  A reasonable royalty is the amount of payment that a patent holder and the alleged infringer would have agreed to in a hypothetical negotiation taking place at a time prior to when the infringement first began.  In considering this hypothetical negotiation, you should focus on what the expectations of the patent holder and the alleged infringer would have been had they entered into an agreement at that time, and had they acted reasonably in their negotiations.  In determining this, you must assume that both parties believed the patent was valid and infringed and that both parties were willing to enter into an agreement. You should also presume that the parties had full knowledge of the facts and circumstances surrounding the infringement at the time of the hypothetical negotiation.

The reasonable royalty you determine must be a royalty that would have resulted from the hypothetical negotiation, and not simply a royalty either party would have preferred. Damages are not based on a hindsight evaluation of what happened, but on what ViaTech and Adobe would have agreed upon at the time of the hypothetical negotiation.  Nevertheless, evidence relevant to the negotiation is not necessarily limited to facts that occurred on or before the date of the hypothetical negotiation.  [Evidence of things that happened after the infringement first began can be considered in evaluating the reasonable royalty to the extent that the evidence aids in assessing what royalty would have resulted from a hypothetical negotiation just prior to the first infringement.][18]  [This may include evidence of usage after infringement started and profits earned by the infringer.][19]

---

[18] Final Jury Instruction No. IV.C., *Wonderland Switzerland AG v. Evenflo Company, Inc.*, C.A. No. 1:20-cv-00727-JPM (D. Del. Jan. 12, 2023), ECF No. 204 at 8244. Adobe objects to this addition as unnecessary, as the instructions elsewhere establish that relevant evidence is not limited to events before the hypothetical negotiation.

[19] Final Jury Instruction No. III.D., *RSB Spine LLC v. Depuy Synthes Sales, Inc., et al*, C.A. No. 19-cv-1515-RGA (D. Del. Dec. 9, 2022), ECF No. 275 at 31629. Adobe objects to this addition as unnecessary and incomplete, as specifying only "usage after infringement started and profits earned by the infringer" does not encompass all relevant factors.

**5.d.    DAMAGES – REASONABLE ROYALTY – RELEVANT FACTORS**[20]

Some of the kinds of factors that you may consider in making your determination of the reasonable royalty, which are often referred to as the "Georgia Pacific" factors, are:

1. The royalties received by ViaTech for licensing of the asserted patent, proving or tending to prove an established royalty.

2. The rates paid by Adobe for the use of other patents comparable to the asserted patent.

3. The nature and scope of the license, as exclusive or nonexclusive, or as restricted or nonrestricted in terms of territory or with respect to whom the manufactured product may be sold.

4. ViaTech's established policy and marketing program to maintain its patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly.

5. The commercial relationship between ViaTech and Adobe, such as whether they are competitors in the same territory in the same line of business, or whether they are inventor and promoter.

6. The effect of selling the patented specialty in promoting sales of other products of Adobe, the existing value of the invention to ViaTech as a generator of sales of its nonpatented items, and the extent of such derivative or convoyed sales.

7. The duration of the patent and the term of the license.

8. The established profitability of the product made under the patents, its commercial success, and its current popularity.

9. The utility and advantages of the patented property over the old modes or devices, if any, that had been used for working out similar results.

10. The nature of the patented invention, the character of the commercial embodiment of it as owned and produced by ViaTech, and the benefits to those who have used the invention.

11. The extent to which Adobe has made use of the invention and any evidence probative of the value of that use.

12. The portion of the profit or of the selling price that may be customary in the particular business or in comparable business to allow for the use of the invention or analogous inventions.

---

[20] The parties agree to reduce these to factors on which evidence is presented.

13. The portion of the realizable profits that should be credited to the invention as distinguished from nonpatented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.

14. The opinion and testimony of qualified individuals who are allowed to express an opinion, that is, experts.

15. The amount that a licensor (such as ViaTech) and a licensee (such as Adobe) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.

No one factor is dispositive and you can and should consider the evidence that has been presented to you in this case on each of these factors. You may also consider any other factors which in your mind would have increased or decreased the royalty Adobe would have been willing to pay and ViaTech would have been willing to accept, acting as normally prudent business people.  The final factor establishes the framework which you should use in determining a reasonable royalty, that is, the payment that would have resulted from a negotiation between ViaTech and Adobe taking place in April 2010.

**5.e.     DAMAGES – APPORTIONMENT**

The amount you find as damages must be based on the value attributable to the patented invention, as distinct from unpatented features of the accused product or other factors such as marketing or advertising. A royalty compensating the patent holder for damages must reflect the value attributable to the infringing features of the product, and no more.  In other words, the royalty base must be closely tied to the invention. The process of separating the value of the allegedly infringing features from the value of all other features is called apportionment. When the accused infringing products have both patented and unpatented features, your award must be apportioned so that it is based only on the value of the patented features, and no more.

**6.  DELIBERATION – INTRODUCTION**

That concludes my instructions on the law.  Now I will explain your deliberations in the jury room and your possible verdicts.

Once you start deliberating, do not talk to the jury officer, or to me, or to anyone else except each other about the case.  If you have any questions or messages, you must write them down on a piece of paper, sign them, and then give them to the jury officer.  The officer will give them to me, and I will respond as soon as I can.  I may have to talk to the lawyers about what you have asked, so it may take some time to get back to you.  Any questions or messages normally should be sent through your foreperson, who by custom of this Court is Juror No. 1.

One more thing about messages.  Do not write down or tell anyone other than your fellow jurors how you stand on your votes.  Your votes should stay secret until you are finished.

**6.a.      DELIBERATION – UNANIMOUS VERDICT**

Your verdict must represent the considered judgment of each juror.  In order for you as a jury to return a verdict, it is necessary that each juror agree.  Your verdict must be unanimous.

As jurors, you have a duty to consult with each other and to deliberate with a view towards reaching an agreement, if you can do so without disregarding your individual judgment. Each of you must decide the case for yourself but do so only after a full and impartial consideration of all the evidence with your fellow jurors.  Listen to each other carefully.  During your deliberations, you should feel free to re-examine your own views and to change your opinion based upon the evidence if convinced your views are erroneous.  But you should not give up your honest convictions about the evidence just because of the opinions of your fellow jurors.  Nor should you change your mind just for the purpose of obtaining enough votes for a verdict.

Remember at all times that you are not partisans.  You are judges of the facts.  Your sole interest is to seek the truth from the evidence in the case.

A verdict form has been prepared for you.  It has a series of questions for you to answer. You will take this form to the jury room and, when you have reached unanimous agreement as to your verdict, you will have your foreperson fill it in, date, and sign the form.  You will then give it to the jury officer and return to the courtroom, where my deputy will read aloud your verdict. Do not show the completed verdict form to anyone or share it with anyone until you are in the courtroom.  Unless I direct you otherwise, do not reveal your answers until you are discharged. After you have reached a verdict, you are not required to talk with anyone about the case unless I order you to do so.

Once again, I want to remind you that nothing about my instructions and nothing about the form of verdict is intended to suggest or convey in any way or manner what I think your verdict should be.  It is your sole and exclusive duty and responsibility to determine the verdict.

**6.b.      DELIBERATION – DUTY TO DELIBERATE**

Now that all the evidence is in and the arguments are completed, you are free to talk about the case in the jury room.  In fact, it is your duty to talk with each other about the evidence, and to make every reasonable effort you can to reach a unanimous agreement.  Talk with each other, listen carefully and respectfully to each other's views, and keep an open mind as you listen to what your fellow jurors have to say.

Try your best to work out your differences.  Do not hesitate to change your mind if you are convinced that other jurors are right and that your original position was wrong.  But do not ever change your mind just because other jurors see things differently, or just to get the case over with.  In the end, your vote must be exactly that - your own vote.  It is important for you to reach unanimous agreement, but only if you can do so honestly and in good conscience.

If any member of the jury took notes, let me remind you that notes are not given any greater weight than the memory or impression of each juror as to what the testimony may have been.  Whether you took notes or not, each of you must form and express your own opinion as to the facts of the case.

No one will be allowed to hear your discussions in the jury room, and no record will be made of what you say.  So you should all feel free to speak your minds.  Listen carefully to what the other jurors have to say, and then decide for yourself.

I am going to remind you now, if you go home this evening and resume your deliberations on the next business day, you are not to talk about the case amongst yourselves or with anyone else during the evening recess.  You may not read or listen to any news about the case in a newspaper, online, through any news apps, on the radio, through any social media, in blogs, or on television during the evening recess.

**6.c.      DELIBERATIONS – SOCIAL MEDIA**

During your deliberations, you must not communicate with or provide any information to anyone by any means about this case.  You may not use any electronic device or media, such as a telephone, cellphone, smartphone, tablet or computer, the Internet, any Internet service, any text or instant messaging service, any Internet chatroom, blog, website, or app such as Facebook, LinkedIn, Snapchat, YouTube, Twitter, TikTok, Telegram, Discord, Instagram, or Wikipedia to communicate to anyone any information about this case or to conduct any research about this case until I accept your verdict.

In other words, you cannot talk to anyone about this case, whether in person, by phone, by text message, by email, or over the Internet.  You can only discuss the case in the jury room with your fellow jurors during deliberations.

**6.d.     COURT HAS NO OPINION**

Let me finish by repeating something I said to you earlier.  Nothing that I have said or done during this trial was meant to influence your decision in any way.  You must decide the case yourself based on the evidence presented.